[Civ. No. 5207.   Third Appellate District.—April 20, 1935.]

CLEMENS A. LOSSMAN, Respondent, v. CITY OF STOCKTON (a Municipal Corporation), Appellant.

J. Le Roy Johnson, City Attorney, for Appellant.

Bradford S. Crittenden and George M. Hench for Respondent.

PULLEN, P. J.—Plaintiff sued the City of Stockton for the death of his minor son. Upon the verdict of a jury, judgment was entered in his favor, from which the municipality appeals.

The action arose out of a collision between an automobile driven by the son of plaintiff, a youth of sixteen years, who was duly licensed to operate an automobile, and a police car then being used as an emergency ambulance driven by a police officer of the City of Stockton.

The accident occurred about 6.30 A. M. on the morning of March 29, 1931. Shortly before the collision the police department of Stockton had received a call to the effect that a woman was suffering from the effects of poison and requested that an ambulance be sent to take her to the emergency hospital. The police ambulance was sent to the address and there found an unconscious woman. She was placed in the police car and it then started for the emergency hospital. The route taken by the ambulance made it necessary to cross the east and west highway known as Charter Way, which way is what is known as a through

highway or boulevard, and by a local ordinance, all cars are required to stop before entering this thoroughfare. The collision occurred within the intersection of these two streets. The intersection was properly signed requiring all cars to come to a stop before entering Charter Way. As to whether the police siren was actually sounding while approaching the intersection and while crossing, there was a sharp conflict in the evidence, and we may presume from the implied finding of the jury upon this point they held contrary to the contention of appellant. The evidence also shows the ambulance was traveling in excess of 45 miles per hour at the moment of the impact. The ambulance struck the car of plaintiff, hurling the boy to the street, causing his death, and without stopping, sped on to its destination. The car being driven by deceased was traveling westerly along Charter Way, and when one of the occupants of the car was asked as to the speed they were traveling, stated they were going from 17 to 20 miles an hour and as they approached the intersection where the accident occurred they slowed down a bit. There is testimony also by an eye-witness that the car reached the intersection before the police car.

As grounds for reversal appellant contends that the deceased was traveling at a rate in excess of 15 miles an hour at the time of the impact and therefore was guilty of contributory negligence as a matter of law, and secondly, that section 1714½ of the Civil Code, under which plaintiff claims his right to sue the city, does not apply to a municipality operating under a freeholders' charter.

The first question to be determined is whether plaintiff's son was guilty of contributory negligence as a matter of law. The accident occurred March 29, 1931. The trial commenced March 7, 1934. The legislature of 1931 (Stats. 1931, chap. 1026) amended section 113 of the California Vehicle Act by adding subdivision (d) thereto. This amendment was effective in August, 1931, and then became and was a rule of evidence in this case under the authority of *Pilcher* v. *Tanner Motor Livery*, 138 Cal. App. 558 [33 Pac. (2d) 58], and *Randall* v. *Evans*, 4 Cal. App. (2d) 575 [41 Pac. (2d) 561]. Under the amendment plaintiff would not have been guilty of negligence as a matter of law and the burden of proof would have been on the defendant to

establish the operation of the vehicle at the speed shown by the evidence constituted negligence. The rule as declared in *Pilcher* v. *Tanner Motor Livery, supra,* was, however, not adopted in the case of *Morris* v. *Pacific Electric Ry. Co. et al.,* 2 Cal. (2d) 764 [43 Pac. (2d) 276], the court there holding that the legislature may not, under pretense of regulating procedure or rules of evidence, deprive a party of a substantive right, such as a good cause of action or an absolute or substantial defense which existed theretofore. (*Estate of Patterson,* 155 Cal. 626 [102 Pac. 941, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654]; *Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]; *James* v. *Oakland Traction Co.,* 10 Cal. App. 785 [103 Pac. 1082].) Nevertheless under the evidence here the jury would have been justified in finding that deceased was not exceeding 15 miles an hour. This issue of fact having been determined adversely to defendant upon a conflict in the evidence, we cannot disturb the finding of the jury that the plaintiff was not guilty of negligence at the time of the accident.

As to the second point, if respondent has a right of action against appellant such right must be found in section 1714½ of the Civil Code, enacted in 1929.

The City of Stockton is a municipal corporation created under the provisions of sections 6 and 8 of article XI of the state Constitution, which provides that cities of a specified class may organize under a charter, and when so organized, may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in the charter, and in respect to other matters they shall be subject to and controlled by general laws. ■ Municipalities have only such legislative authority as may have been expressly conferred or delegated by the state, and powers not so delegated are reserved in the state. (*Simpson* v. *Payne,* 79 Cal. App. 780 [251 Pac. 324].)

By section 11 of article XI of the Constitution, it is provided that "any . . . city . . . may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws". Stockton is governed by a freeholders' charter (Stats. 1923, p. 1321, chap. 7.)

■ The regulation of street traffic is not a municipal affair. (*Helmer* v. *Superior Court*, 48 Cal. App. 140 [191 Pac. 1001]; *Ex parte Daniels*, 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172].) In the latter case·it will be·recalled the court, considering that portion of the Constitution quoted above, held that where there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state.

■ A fundamental rule of construction declares that general language shall not be construed to apply to the government or its agencies unless expressly included by name. (Blackstone's Commentaries, book 1, p. 261; Kent's Commentaries, p. 460.) Therefore, following the decision in *Balthasar* v. *Pacific Electric Ry. Co.*, 187 Cal. 302 [202 Pac. 37, 19 A. L. R. 452], decided in 1921, which held the general restrictions as to speed and turning at street intersections in the California Vehicle Act of 1917 did not apply to fire apparatus, because neither the state nor municipality were expressly included therein by name, the legislature in 1923 enacted section 144 of the California Vehicle Act. The act of 1917 contained various provisions governing the operation of vehicles upon the highway, but contained only one express provision on the subject of police and fire department vehicles as follows:

"Police patrol wagons, police ambulances, fire patrols, fire engines and fire apparatus in all cases while being operated as such, shall have the right of way with due regard to the safety of the public; but this provision shall not protect the driver or operator of any such vehicle or his employer or principal from the consequence of the arbitrary exercise of this right or for injuries wilfully inflicted." (Stats. 1917, chap. 218, p. 402.)

It is therefore readily seen that the vehicle act in effect when the court decided the Balthasar case, *supra,* did not contain any specific exemption of police and fire equipment as to speed limits, and the following language in the Balthasar case was entirely appropriate and justified:

"We have only to consider the utter absurdity of requiring peace officers to observe the arbitrary speed limits fixed by the Motor Vehicle Act when pursuing criminals, who may be fleeing in high-power cars at twice the legal limit, to make manifest that the legislature did not have in view such a limitation on peace officers. And it is equally clear that

they did not contemplate retarding the speed of fire apparatus in going to a fire." (*Balthasar* v. *Pacific Electric Ry. Co., supra.*)

As we have pointed out, the legislature in 1923, enacted the present California Vehicle Act, which definitely and in language not susceptible of misunderstanding made its provisions applicable to the state and its agencies, particularly in section 144 thereof, stating, "The provisions of this act applicable to drivers of vehicles upon the public highways shall apply to the drivers of all vehicles operated by the state or any political subdivision thereof, or of any incorporated city, subject to such specific exemptions as are set forth in the act," a declaration of legislative intent that the provisions of California Vehicle Act should apply to governmentally owned and operated vehicles. Thereafter, the legislature in 1929 further amended the California Vehicle Act by adding section 8½, defining "authorized emergency vehicles", and also amended sections 120 and 132 thereof by striking out direct reference to such vehicles by name and substituting the words "authorized emergency vehicles as defined in this act," and exempted such emergency vehicles from the provisions of the act limiting the speed of vehicles, and granting such vehicles the right of way. At the same session the legislature waived its immunity from suits and enacted section 1714½ of the Civil Code. At the same time the legislature amended the California Vehicle Act by exempting fire, police and ambulance cars from the speed limits applicable to other vehicles (sec. 120), granted them the right of way by section 132, and required street-cars and other vehicles to stop upon the approach of such vehicles (sec. 133), and by sections 95 and 111 gave to police, fire and ambulance vehicles the exclusive use of sirens and red lights visible from the front.

■ Such general legislation as is expressed in section 1714½ of the Civil Code and section 144 of the California Vehicle Act is a departure from the common-law rule of nonliability for damages against the sovereign arising out of performance of strictly governmental functions, and clearly expresses in the broadest terms possible, the comprehensive scope of the legislative intent.

The first paragraph of section 1714½ of the Civil Code imposes upon the state, every county, city and county,

municipal corporation, irrigation district, etc., a liability to every person who sustains any damage by reason of the negligent operation of any motor vehicle by an employee of such agency, acting within the scope of such agency; and permits such injured person to sue such state, municipal corporation, etc., in any court of competent jurisdiction in the manner directed by law. The second paragraph provides that where a recovery is had, then the state, county, municipal corporation, etc., as the case may be, shall be subrogated to the rights of the person injured, against such officer or employee.

In 1929, section 8½ was adopted defining "authorized emergency equipment", and then substituted "authorized emergency vehicles" for the words "police or fire department vehicles" where those words were used in the act. The purpose of defining "authorized emergency vehicles" in section 8½ was obviously to permit the use of this collective term as a matter of convenience and to avoid the necessity of a repetition in each successive section of a detailed enumeration of those vehicles subject to special privileges, making for simplicity in draftsmanship, and in case of the necessity of legislative amendment the class referred to in section 8½ could be increased or diminished and the desired purposes accomplished without amending several other sections at the same time.

The case of *Armas* v. *City of Oakland*, 135 Cal. App. 411 [27 Pac. (2d) 666, 28 Pac. (2d) 422], is cited by appellant as authority for their contention that section 1714½ of the Civil Code is not applicable to a chartered municipality in the operation of its police cars. What is said in that case however, as to the effect of section 1714½ of the Civil Code, must be considered as *dicta*, for the holding by the court that plaintiff therein was guilty of contributory negligence, is a full and complete answer as to the issues raised therein; in view, however, of the full consideration there given by court and counsel to the questions here involved, we have carefully studied the Armas case, *supra*, as an aid in solving the present problems.

It is suggested in the Armas case, *supra*, that the failure to include the words "authorized emergency vehicles" in section 144 of the California Vehicle Act indicates a legislative intent to exclude such vehicles from the provisions of

that act. This we doubt. The effect of such a conclusion would be to leave police and fire vehicles using the streets and highways without regulation, except such as a city or county might itself impose, and we find no such regulation either by the city of Oakland nor in the City of Stockton. To deny the application of the provisions of the act to police and fire equipment would also be to deprive those departments and the general public of the benefits of the exclusive use of a siren (sec. 95 [b] of the California Vehicle Act) the right of way (132 California Vehicle Act) and exemption from speed limits (120 California Vehicle Act).

It is also advanced in that opinion as a further indication of the legislative intent that when the legislature in chapter 263 (Stats. 1929) expressly excused from liability members of a fire or police department operating a motor vehicle in their line of duty it did not intend to place a liability upon a city for damages arising therefrom by the enactment of section 1714½ of the Civil Code. The statute just mentioned provides that ''no member of a fire department or police department maintained by a county . . . city, town or district shall be liable in any civil action for damage to persons or property occasioned by any such member, arising out of the operation in line of duty of a motor vehicle of such department while responding to an alarm of fire or an emergency police call''. To us, however, such legislation indicates a clear intention on the part of the legislature to attach liability to the governmental agency.

Section 1714½ of the Civil Code was added by chapter 260 (Stats. 1929, p. 565) and approved by the Governor May 11, 1929; on the same day chapter 263, quoted above, was also approved and both enactments became effective at the same time. ■ It is a well-recognized rule that statutes upon the same subject matter should be read together and each given full force and effect as far as possible. The legislature recognized that members of the police and fire departments in the performance of their duties are often called upon to exceed the ordinary speed limit and take the right of way. If such employees were compelled to weigh the chances and assume a personal responsibility, speed and efficiency would be affected. The legislature however, realized that such operation of motor vehicles on the streets did create a hazard to the general public and therefore provided that the city should be held liable when the

exercise of governmental functions resulted in injury to its people. The legislature also at the same time authorized its governmental agencies to obtain insurance to indemnify itself against loss by such actions. If, too, an employee is unduly reckless or careless in the operation of the vehicle under his control the municipality still retains its rule-making and disciplinary powers and can, as any private concern, under similar circumstances, exercise restraint over its employees.

It cannot be argued that because the state deemed it expedient to waive its right of subrogation against its employees, it thereby denied a right of action against itself. Subrogation is the substitution of one in the place of another, and if for any reason the one in whose favor such subrogation runs cares to waive such privileges, no one can complain. "Subrogation is considered as the creature of equity and is so administered as to secure real and essential justice without regard to form." (*Brown* v. *Rouse,* 125 Cal. 645 [58 Pac. 267]; *Randall* v. *Duff,* 107 Cal. 33 [40 Pac. 20].)

■ There is no question but what the regulation of the organization and maintenance of a police or fire department by a chartered city is a municipal affair, as, for instance, such matters as relate to the fixing of compensation and providing for a pension system (*Klench* v. *Board of Pension Commrs.,* 79 Cal. App. 171 [249 Pac. 46]; *Popper* v. *Broderick,* 123 Cal. 456 [56 Pac. 53]; *Jackson* v. *Wilde,* 52 Cal. App. 259 [198 Pac. 822]), also the removal of a chief of police (*Dinan* v. *Superior Court,* 6 Cal. App. 217 [91 Pac. 806]); removal from office, recall, etc. (*Scheafer* v. *Herman,* 172 Cal. 338 [155 Pac. 1084]), but when police and fire equipment make use of the streets of a city, it affects not only the citizens of that city but frequently endangers the safety of visiting motorists and pedestrians as well, and it then becomes a matter of public concern and amenable to general law. (*Ex parte Daniels, supra; In re Murphy,* 190 Cal. 286 [212 Pac. 30]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334]; *Linderbaum* v. *Barbour,* 213 Cal. 277 [2 Pac. (2d) 161]; *Helmer* v. *Superior Court,* 48 Cal. App. 140 [191 Pac. 1001].) There is nothing in any of the statutes under consideration that attempts the supervision or control of any employee of

a police and fire department; it merely requires that in regard to the public use of the streets and highways, such employees shall make use thereof with due regard to the safety of all persons thereon.

This contention seems to be emphasized by section 144 of the California Vehicle Act, which directly and positively makes applicable the provisions thereof to the drivers of *all* vehicles operated by the state or any political subdivisions thereof, or any incorporated city, subject to such specific exceptions as may be found in the act itself.

The legislature would scarcely intend to surrender the safety of the public to the arbitrary operation of police and fire vehicles subject only to such control or regulation as a county or municipality might care to impose, and to destroy the uniformity of the regulations of the California Vehicle Act; and not only is this regulation removed from the city streets, but in these days when our rural counties maintain fire apparatus, the highways are open to fire vehicles speeding toward some grain or timber fire without restriction on the drivers or protection to the traveling public, and not only vehicles operated by a police or fire department or a traffic officer or a publicly owned ambulance but also to the privately owned emergency repair vehicles of a public utility corporation.

The court in *Armas* v. *City of Oakland, supra,* advanced as a further ground for its decision that if the legislature intended to apply the general traffic regulations to the operation of police and fire vehicles then to that extent the statute must be held unreasonable and void. However, whether the courts may approve or disapprove of such a regulation by the legislature, is of no judicial concern, that being a matter exclusively within the scope of the legislative authority. Furthermore, in several decisions of our courts of review it has in fact been recognized that the provisions of the vehicle act are applicable to police and fire department vehicles. (*Byers* v. *Spicer,* 116 Cal. App. 219 [2 Pac. (2d) 479]; *Boyle* v. *Stewart,* 116 Cal. App. 714 [3 Pac. (2d) 326]; *Spencer* v. *Shiffman,* 119 Cal. App. 746 [7 Pac. (2d) 361]; *City of Sacramento* v. *Hunger,* 79 Cal. App. 234 [249 Pac. 223].) In these opinions the provisions of the California Vehicle Act were before the court

and considered, and it was nowhere suggested that the operation of such vehicles was a municipal affair.

We are of the opinion, therefore, that section 1714½ of the Civil Code is here applicable, and plaintiff is entitled to maintain his action.

From the facts in the instant case the jury were justified in finding the deceased was not guilty of contributory negligence, and also upon conflicting evidence the jury impliedly found that the police car was not sounding its siren as required by section 132 (b) of the California Vehicle Act. So, also, the jury found upon sufficient evidence that the police car here involved was not at the time of the collision then being driven with due regard for the safety of persons using the highway, and particularly as regards to deceased.

The judgment should therefore be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.