[Civ. No. 18734. First Dist., Div. One. May 26, 1960.]

ANTHONY F. GONSALVES, Appellant, v. PETALUMA BUILDING MATERIALS COMPANY (a Corporation) et al., Respondents.

322

Hutchinson & Quattrin for Appellant.

Geary, Spridgen & Moskowitz for Respondents.

TOBRINER, J.—Appellant, the bystander victim of a truck collision, unsuccessfully contends that the judgment for respondents cannot stand because of the submission to the jury of certain erroneous instructions, the refusal of other proposed instructions, the denial of his motion for new trial, and the court's striking of his affidavit in support of that motion.

This highway accident case originated in an area where the north and southbound roadways are separated by 40 to 50 feet of open ground. Following the procedure of the trial court, we designate the fast moving north lane, closest to the dividing zone, N-2 and the slowing moving lane N-1; their southbound counterparts we designate S-1 and S-2. At the time of the accident drainage ditches were being installed on the west side of the southbound highway, and appellant, employed by contractors Jurkovich and Reichhold, operated the sweeper which cleared the dirt from the road. To the north of the construction area a crossover extends from the north to the southbound highway; and to the south of this work area, a crossover from the south to the northbound highway.

In performing the sweeping operation appellant left the island between the two highways at a point 500 feet south of the north crossover; he proceeded to the western edge of S-1 and swept southward to the southern crossover; turning left onto it he made another left turn into lane N-1; by a third

left turn he entered the center island 500 feet south of the north crossover. The water truck followed behind. Finishing his first sweep appellant parked in the dividing zone and waited for the water truck to complete its circuit. The water truck proceeded north in lane N-1.

Respondent Boyd, driving a truck north in lane N-2 at 50 miles per hour, five miles below the speed limit, noticed the water truck in lane N-1 travelling at 20 miles per hour. Though Boyd knew that construction work was in progress on the southbound highway he did not associate the water truck with this construction, and indeed the northbound highway was not marked with any traffic-construction signs. As the two trucks approached the collision point the water truck, according to Boyd, made a left turn 30 feet in front of respondent's truck, crossing a foot and a half into lane N-2; according to Jurkovich, the water truck's driver, he "was going to pull into the left lane and then pull in front of the sweeper . . . in the dividing strip." Boyd, seeking to avoid a collision, decelerated, swerved towards the dividing zone, but, seeing appellant there, veered back onto the highway, and collided with the water truck. Boyd "had applied the brakes by then" and his vehicle was out of control; the truck slid on the loose ground of the dividing zone, and struck appellant.

We consider appellant's attack upon the judgment for respondents, after the jury's verdict, under three main classifications—Instructions Given, Instructions Refused, and Motion and Affidavit for New Trial.

### Instructions Given

Appellant objects to three of the rendered instructions, the first and main objection being to the instruction[1] on Vehicle Code, section 525, subdivision (b)[2], and conduct in violation of it. This attack proceeds on three theories: (1) Vehicle Code,

---

[1] " 'Section 525. It is unlawful to drive any vehicle upon any highway which has been divided into two or more roadways by means of intermittent barriers or by means of a dividing section of not less than two feet in width either unpaved or delineated by curbs, lines or other markings on the roadway except to the right of such barrier or dividing section, or to drive any vehicle over, upon or across any such dividing section, or to make any left turn or semi circular or U-turn on any such divided highway, except through an opening in such barrier designated and intended by public authorities for the use of vehicles or through a plainly marked opening in such dividing section.' . . . Conduct which is in violation of the Vehicle Code Sections . . . 525 . . . constitutes in itself negligence. This means that if . . . you do find that a person did so conduct himself, it requires a presumption that he was negligent. . . . "

[2] Now Vehicle Code, section 21651.

section 453, subdivisions (b) and (c)[3] exempt the water truck from the rule in section 525, subdivision (b); (2) no evidence exists that the water truck ever made a left turn; therefore, the instruction is not responsive to the evidence; and (3) the instruction is likewise nonresponsive because the record is devoid of any proof that, pursuant to section 144 of the Streets and Highways Code,[4] the State Highway Engineer authorized this highway to be divided. We analyze each contention in the order stated.

Appellant's first contention succumbs to the literal wording of section 453, subdivision (c). The water truck upon entering the southern crossover ceased to be "actually engaged in work upon the surface of the road" and at that point commenced "traveling to . . . such work," thus subjecting its operations to section 525, subdivision (b), and the other provisions of division 9. The exemption afforded by section 453 cannot exceed the purpose for which it was enacted: the release of vehicles "actually engaged" in construction work from traffic laws designed for the regulation of normal highway traffic. While the Legislature relaxed, because of the dissimilarity between normal highway travel and construction work, the traffic rules of division 9 for construction vehicles, in the performance of construction work, the Legislature did not clothe such vehicles with a general immunity when operating outside of the immediate construction area. Any such concept would cause a dangerous confusion upon members of the motoring public, who rightly assume that general traffic regulations apply to these vehicles when they

---

[3] "(b) The provisions of this code shall not apply to public employees and publicly owned teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway, or work of installation, removal, repairing or maintaining traffic signs . . . but shall apply to such persons and vehicles when traveling to or from such work. [Now § 21053.]

"(c) The provisions of this division of the code shall not apply to the duly authorized representatives of any public agency while actually engaged in performing any of the work described in subdivision (b) hereof but shall apply to such persons when traveling to and from such work." [Now § 21054.]

[4] "The State Highway Engineer is authorized to divide or separate any state highway into separate roadways wherever there is particular danger to the traveling public of collision between vehicles proceeding in opposite directions or from cross traffic by constructing curbs, central dividing sections or other physical separations, or by signs, marks or other devices in or on the roadway appropriate to designate the dividing line. The rules governing operation of vehicles on divided highways are contained in Section 525 of the Vehicle Code."

operate in an area which neither carries its own warning signs nor any indication that it is a construction zone.

The construction area in the instant case extended for some 500 feet along the southbound roadway of this divided highway; only this area was marked as a construction zone. The northbound roadway, concededly divided by 40 to 50 feet from its southbound counterpart, was not marked as a construction zone and indeed the 55 miles per hour speed limit applied there; this roadway clearly did not constitute a construction area where the water truck "actually engaged in work upon the surface of" the highway.

*Yarrow* v. *State* (1960), 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687], does not sustain appellant's flat contention that the case adversely disposes of the instant instruction on section 525, subdivision (b). In that case both parties assumed the applicability of section 453, the state contending that the section indicated no waiver of sovereign immunity and the plaintiff arguing that at most it exempted public employees from penal sanctions for violation of the Vehicle Code. Moreover, in that case, the evidence revealed that plaintiffs had passed two road construction warning signs, that a bulldozer actually engaged in work upon the highway and that plaintiff Yarrow overturned his car in attempting to pass the bulldozer. In holding that section 453, subdivision (b) did not "retain sovereign immunity for the negligent operation of motor vehicles while actually engaged in highway construction or repair . . ."(p. 441), the Supreme Court stated: "The provisions of section 453, subdivision (b) seem to be clearly limited to the penal consequences of violations of Vehicle Code regulations. . . . *To the extent* that the public employee is relieved from the *per se* consequences of violation of Vehicle Code regulations, it would seem that the public employer . . . should also be relieved from liability for *per se* negligence. . . ." (Pp. 441, 442; emphasis added.) The court suggests as a "reasonable solution" that "the public employer is relieved from *per se* negligence or imputed liability, and is still subject to common law negligence. . . ." (P. 442.) Since the court did not face or decide the issue of defining the limits of actual engagement "in work upon the surface of a highway" the decision is not in point. Nor does appellant's citation of the following cases, which involved fire and police vehicles, aid in the solution of this problem. Both *Balthasar* v. *Pacific Elec. Ry. Co.* (1921), 187 Cal. 302 [202 P. 37, 19 A.L.R. 452]; *Armas* v. *City of Oakland* (1933),

135 Cal.App. 411 [27 P.2d 666, 28 P.2d 422], involved a fire department vehicle responding to a fire alarm; *City of Sacramento* v. *Hunger* (1926), 79 Cal.App. 234 [249 P. 223], pertained to a police car responding to a call as to a burglar; *Lossman* v. *City of Stockton* (1935), 6 Cal.App.2d 324 [44 P.2d 397], involved a police ambulance taking a patient to an emergency hospital.

 Appellant's second charge against the 525 subdivision (b) instruction, that it was not responsive to any evidence, cannot withstand Boyd's testimony that the water truck made a left turn from lane N-1, and Jurkovich's admission under cross-examination that it was his "plan to make this left turn from 'N-1' across in front of the sweeper. . . ." While Jurkovich, when asked if "it was your intention to turn directly into this" dividing zone, stated, "Well, . . . I was going to pull into the left lane and then pull in front of the sweeper," the jury was not required to believe this particular statement to the exclusion of all other testimony: the record contained considerable evidence that Jurkovich was engaged in the process of turning into the dividing zone, and the instruction was, as a consequence, proper.

 Appellant's further contention as to non-responsiveness, that the water truck's failure ever *to enter* the dividing zone vitiates the instruction as to violation of section 525, subdivision (b), cannot stand. Since the statute sought to protect against the possibility of highway accidents, appellant cannot find refuge in the fact that the collision itself prevented the consummation of a left turn into this area. Appellant's citation of *Graham* v. *Mead* (1958), 159 Cal. App.2d 301 [323 P.2d 1008], does not advance his cause; that case merely holds an instruction which finds *no* support in the evidence cannot be upheld, and, if prejudicial, compels a reversal. We have pointed out that the evidence here supported the instruction. Moreover, the doctrine of invited error precludes any claim that because the evidence failed to show that the water truck made a left turn into the dividing zone the court erred in giving this instruction: appellant's own requested instructions numbers 39 and 41, *infra*, rested upon the theory that the evidence did indicate such a left turn. (*George* v. *City of Los Angeles* (1942), 51 Cal.App.2d 311, 319-320 [124 P.2d 872]; *Yolo Water & Power Co.* v. *Hudson* (1920), 182 Cal. 48, 51 [186 P. 772]; *Wells* v. *Lloyd* (1942), 21 Cal.2d 452, 460 [132 P.2d 471].)

Appellant's third claim of error in this instruction proceeds upon the theory that the record contains no evidence that the State Engineer authorized this highway to be divided in accordance with section 144, *supra,* and that the court could not take judicial notice of the State Engineer's actions within the meaning of section 1875, subdivision 3, of the Code of Civil Procedure.

Appellant's attack fails to surmount the presumption "[t]hat official duty has been regularly performed." (Code Civ. Proc., § 1963, subd. 15.) Thus in *Borum* v. *Graham* (1935), 4 Cal.App.2d 331 [40 P.2d 866], defendant motorist injured plaintiff while she was within a crosswalk. One of the bases of the instructions rested upon a showing of "negligence in operating the automobile across a pedestrian crosswalk established by municipal ordinance while there was therein . . . a pedestrian . . ., such negligence being predicated on violation of a city ordinance making it unlawful so to do . . ." (P. 334.) On appeal the defendant, among other things, contended the trial court erred in admitting into evidence section 5 of the Pasadena City Ordinance, and in giving instructions based upon it. In affirming plaintiff's judgment the court stated: "Section 5 provided that the chief of police, subject to the approval of the city manager, was authorized to mark crosswalks. . . . Pursuant to this section the chief of police had marked pedestrian crosswalk white lines. . . . There was some question raised by appellant as to failure of proof of the securing of approval thereof by the city manager. *Such approval must be deemed proved,* in the absence of evidence to the contrary, *by the presumption of law that official duty has been performed* by the officer charged therewith. (Code Civ. Proc., § 1963, subd. 15.)" (Pp. 335-336; emphasis added.)

Appellant's argument that the State Highway Engineer must officially "divide" the highway in order that a physically separated roadway fall under section 525, subdivision (b), concocts an artificiality. Neither the statute nor common sense would require such formal proclamation by the Engineer to confirm the fact of separation, which is obvious to every passing motorist on Highway 101.

Appellant's remaining contentions on this point are inconclusive. The cases which he cites do not involve section 525, subdivision (b) ; for instance, *De Yo* v. *Umina* (1953), 121 Cal.App.2d 505 [263 P.2d 623], pertains to subsection (a) rather than (b) of section 525. Appellant's claim that there

is nothing to " 'designate the dividing line' between the roadways" fails in the face of the stipulation and testimony of the 40 to 50-foot separation, particularly when such evidence is integrated with the reference in section 144 (Streets and Highways Code) to "central dividing sections or other *physical* separations." (Emphasis added.) Appellant's argument that one roadway originally served as the old highway and the other became a newly constructed roadway is not a decisive factor in determining whether the highway is a divided one.

The second instruction disapproved by appellant charged the jury: "The mere fact that an accident happened considered alone does not give rise to a legal inference that it was caused by negligence or that any party to this action was negligent." While this instruction is proper in many cases (*Shaw* v. *Pacific Greyhound Lines* (1958), 50 Cal.2d 153, 156 [323 P.2d 391]), the Supreme Court has held its rendition erroneous in two situations: (1) where the uncontradicted evidence warrants the application of the res ipsa loquitur doctrine, even though an instruction on such theory was not requested (*Jensen* v. *Minard* (1955), 44 Cal.2d 325, 329 [282 P.2d 7]; *Alarid* v. *Vanier* (1958), 50 Cal.2d 617, 625 [327 P.2d 897]; *Phillips* v. *Noble* (1958), 50 Cal.2d 163, 166-167 [323 P.2d 385]); and (2) where "a presumption of negligence arises as a result of defendant's disobedience of a statute." (*Alarid* v. *Vanier, supra* (1958), 50 Cal.2d 617, 625.)

As to the first situation, assuming, *arguendo*, that the doctrine of res ipsa loquitur may be applied in favor of an innocent third party injured by a collision between two vehicles (*Godfrey* v. *Brown* (1934), 220 Cal. 57, 66-67 [29 P.2d 165, 93 A.L.R. 1092]; Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 204-208; but compare *Busch* v. *Los Angeles Ry. Co.* (1918), 178 Cal. 536, 539 [174 P. 665, 2 A.L.R. 1607]; *Diamond* v. *Weyerhaeuser* (1918), 178 Cal. 540, 542 [174 P. 38]); the statement in *Phillips* v. *Noble* (1958), 50 Cal.2d 163, 167 [323 P.2d 385] applies: "Here no instruction on res ipsa loquitur was requested or given, and the case is not one in which the doctrine may be applied as a matter of law on the basis of undisputed facts. The evidence relating to the conduct of . . . [Jurkovich] is conflicting, and we cannot say that it is more probable than not that both drivers were negligent or that one was at fault to the exclusion of the other." Jurkovich

testified that he made a left turn signal; he later admitted that he could not be sure that his arm was not turned down as for a slow signal; respondent Boyd testified he kept the water truck generally within his field of vision, that his eyesight is "all right," he doesn't wear glasses, is not bothered with ". . . 'tunnel vision' or anything like that," but did not see any signal for a turn given.

Turning to the second situation, we find the instruction erroneous on the basis above stated: once having instructed on violation of statute, the trial court should not have instructed that the mere happening of the accident did not imply negligence. In view of the fact that the outcome of the case largely depended upon the nature of the water truck's left turn, we cannot believe that the instruction as to the happening of the accident was crucial to the result. The rendition of this verbal charge, whatever its legalistic import, could not have made the difference in the jury's minds between a verdict for respondents or for appellant. After an examination of the entire record, we do not find the error prejudicial. (Cal. Const., art. VI, § 4½; *Guerra v. Handlery Hotels, Inc.* (1959), 53 Cal.2d 266, 273 [1 Cal. Rptr. 330, 347 P.2d 674].)

The third and final instruction to which appellant objects charged that in deciding whether a violation of statute were excusable or justifiable, the jury "may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes not of his own intended making induce him, without moral fault, to do otherwise." In *Alarid v. Vanier, supra* (1958), 50 Cal.2d 617, 623-624, the Supreme Court expressly disapproved this instruction. (See also *Bryan v. Smalley* (1959), 166 Cal.App.2d 763 [333 P.2d 387].) As the Supreme Court stated in *Alarid v. Vanier, supra* (1958), 50 Cal.2d 617, however, "No precise formula can be drawn for deciding whether there has been a miscarriage of justice. In each instance the determination whether the probable effect of an instruction has been to mislead the jury and whether the error has been prejudicial so as to require a reversal depends upon all the circumstances, including the evidence and the other instructions given." (P. 625.) In the instant case substantial evidence indicated that the water truck's movements caused this accident. We have concluded that this erroneous instruction, in view of the evidence and the other instructions, worked no such prejudice "as to require reversal."

## *Instructions Refused*

The trial court's refusal to instruct the jury in accordance with three of appellant's proposed instructions prompts the next attack upon the judgment.

 Our analysis and conclusion as to the propriety of the instruction as to section 525, subdivision (b) precludes appellant's claim of error in the court's refusal of appellant's 41st proposed instruction.[5] "The giving of a confusing or misleading instruction is, of course, error. . . ." (*Butigan* v. *Yellow Cab Co.* (1958), 49 Cal.2d 652, 660 [320 P.2d 500, 65 A.L.R.2d 1].)

Appellant further argues that the situation compelled and justified the driver of the water truck in turning into the strip because he could not use the north crossover; that the proof demonstrated that "the watering truck could not be so maneuvered without literally 'violating' section 525, subdivision (b) and that the traffic then functioning prevented its passage . . . on the southbound roadways . . . [north of the construction area]." This statement, not supported by any citation to the record, seems to rest solely on Jurkovich's testimony that "the flagman had the traffic stopped . . . [in the south roadway] and I didn't know whether actually I would have a chance of getting through this area or not. . . ." The trial court struck this testimony and instructed the jury to disregard it. If, however, the driver's turn could be justified, this point was covered by the court's subsequent instruction that any presumption of negligence arising from violations of the Vehicle Code "may be overcome by other evidence showing that under all the circumstances . . . the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. . . ."

 The court also properly refused appellant's proposed instruction number 36.[6] The court's instruction[7] per-

---

[5] "No. 41. It is lawful to make a left turn from the northbound lanes of traffic to the area between the northbound and southbound lanes in the area of the place on Highway 101 where the water truck was, as shown by the evidence, if such turn were *made or attempted* in accordance with the other rules of law given you in these instructions." (Emphasis added.)

[6] "The manner of operation and turning the water truck is immaterial in this cause unless you find from all the evidence that the manner of operating the water truck was the sole proximate cause of plaintiff's injuries."

[7] "When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct,

taining to the liability of joint tortfeasors adequately covered appellant's proposition. (*People* v. *Garcia* (1959), 174 Cal. App.2d 525, 531-532 [344 P.2d 855] ; *People* v. *Nelson* (1955), 131 Cal.App.2d 571, 575 [281 P.2d 8].)

The court's refusal to give appellant's requested instruction number 39[8] finds support on two bases: first, the court's own instruction[9] in the terms of BAJI number 138 more accurately stated the law (*Clark* v. *State* (1950), 99 Cal. App.2d 616, 620-622 [222 P.2d 300]) ; and, second, the legal proposition contained in appellant's proposed instruction was adequately covered by the court's instruction (*Middleton* v. *Post Transportation Co.* (1951), 106 Cal.App.2d 703, 706 [235 P.2d 855] ; *Kent* v. *First Trust & Savings Bank* (1950), 101 Cal.App.2d 361, 372 [225 P.2d 625].) Appellant's citation of *Reynolds* v. *Filomeo* (1951), 38 Cal.2d 5 [236 P.2d 801], does not advance his position. In reversing a judgment of nonsuit the court merely held that a jury might find that the defendant as a prudent person should have anticipated the left turn of the vehicle in which plaintiffs rode and which travelled in an opposite direction than defendant.

### Motion for New Trial and Affidavit in Support

Lastly, appellant attacks the trial court's denial of his motion for new trial and the striking of Mr. Hutchinson's supporting affidavit. We first consider the striking of the affidavit.

Appellant based his motion for a new trial upon subdivisions 1, 2, 3, 6 and 7 of section 657 of the Code of Civil

---

contribute concurrently and as proximate causes to the injury of another, each of such persons is liable. This is true regardless of the relative degree of the contribution. It is no defense for one of such persons that some other person, not joined as a defendant in the action, participated in causing the injury.''

[8] ''If you find that defendants knew that highway construction work was in progress at the place on Highway 101 to the left of the place where plaintiff was struck by the dump truck and knew that the water truck was being used in such work, it is for you to determine whether, as prudent persons, defendants should have anticipated the possibility that the water truck might turn left from the northerly lanes of the highway to the place where such work was being done.''

[9] ''A person, who, himself, is exercising ordinary care, has a right to assume that others too will perform their duty under the law and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate an accident which can be occasioned only by violation of law or duty by another. (However, an exception should be noted: The rights just defined do not exist when it is reasonably apparent to one or in the exercise of ordinary care would be apparent to him that another is not going to perform his duty.) ''

Procedure.[10] In accordance with section 658 of this code counsel for appellant filed the affidavit purporting to support grounds 1 to 3. Appellant's notice of intent to move for a new trial stated, in essence, the following reasons for a new trial which are pertinent to our consideration: (1) *Irregularity in the proceedings of the court, the jury and defendants*: instructions not responsive to evidence, refusal of appellant's proposed instructions 39 and 41, respondents' proposal of the 525, subdivision (b) instruction, and the jury's disregard of other instruction and disposition of the cases solely upon the 525, subdivision (b) instruction. (2) *"Misconduct of the jury"*: disregard of instructions and finding without and against the evidence; (3) *"Accident and surprise, which ordinary prudence could not have guarded against"*: respondents' request of 525, subdivision (b) instruction only after the case in chief and rebuttal had been closed, which does not find support in the evidence.

The affidavit purported to support these claims by reciting certain evidence, and interpretations thereof, as well as by alleging respondents' request for the 525, subdivision (b) instruction, outside the presence of the jury. After both appellant and respondents closed their cases in chief and prior to appellant's reopening of the case for two other purposes, the affidavit alleged Mr. Hutchinson's interrogation of the jury foreman who stated that the jury first considered whether the water truck was proceeding to make an unlawful left turn and, upon unanimously so concluding, failed to consider any other issues, but voted a respondents' verdict.

First, to the extent that the affidavit purported to support contentions relating to the refusal of instructions and the giving of instructions which were nonresponsive to evidence, the affidavit certainly fell within the "surplusage, sham, and immaterial" basis of respondents' motion to strike; it is well settled that erroneous instructions or refusal to give an instruction are errors "of law, occurring at the trial" under

[10] " . . . 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; 2. Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors; 3. Accident or surprise, which ordinary prudence could not have guarded against; . . . 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law; 7. Error in law, occurring at the trial and excepted to by the party making the application. . . ."

the seventh subdivision of section 657 of the Code of Civil Procedure. (*Jansson* v. *National Steamship Co.* (1922), 189 Cal. 187, 192-193 [208 P. 90]; *Montgomery* v. *Globe Grain & Mill. Co.* (1930), 109 Cal.App. 695, 699 [293 P. 856]; *O'Malley* v. *Carrick* (1930), 108 Cal.App. 520 [291 P. 871].)

Second, the affidavit's allegations as to the jury's application of only one instruction and disregard of others does not establish the basis for a new trial. It is the general rule in California that affidavits of jurors may not be used to impeach a verdict except where " '. . . one or more of the jurors have been induced to assent to any general or special verdict . . . by a resort to the determination of chance . . .' (Code Civ. Proc., § 657, subd. 2)'' or where a juror has concealed his bias or disqualification by false answers on *voir dire*. (*Kollert* v. *Cundiff* (1958), 50 Cal.2d 768, 772-773 [329 P.2d 897].) The nature of the action taken by the jury as to the court's instructions is quite another matter: ''There would be no freedom of discussion in the jury-room if they were subject to a possible censorship of this character. And the stability of judicial determinations would be . . . imperiled. . . .'' (*Saltzman* v. *Sunset Tel. etc. Co.* (1899), 125 Cal. 501, 505 [58 P. 169]; see also *Siemsen* v. *Oakland, S.L. & H. Electric Ry.* (1901), 134 Cal. 494, 497 [66 P. 672].)

 Third, appellant's claim of surprise because of the requested instruction on 525, subdivision (b) of the Vehicle Code is such that the trial court could well have found it to be sham. On the first day of this four-day trial, respondents' attorney stated, ''[T]o win this case I am going to have to prove that Jurkovich was responsible and solely responsible.'' During the trial respondents' attorney brought into issue Jurkovich's signaling, his attempt to turn into the dividing zone, the lack of construction signs on the northbound roadway, and Jurkovich's use of his rearview mirrors; the parties also stipulated that the north and southbound roadways were divided by 40 to 50 feet. Mr. Hutchinson's asserted failure to anticipate the instruction on the divided highway and left turn does not constitute ''[a]ccident or surprise, which ordinary prudence could not have guarded against.'' (Code Civ. Proc., § 657, subd. 3.)

 Nor did respondents' proposal of the 525, subdivision (b), instruction after the close of the cases in chief, but prior to appellant's reopening and the argument of both parties to the jury, constitute irregularity within Code of Civil Procedure, section 657, subdivision (1). While

section 607, subdivision (a), requires that instructions be delivered to the judge and opposing counsel before the first witness is sworn, in a jury case, the section also provides that "[t]hereafter, and before the commencement of the argument, counsel may deliver to such judge, and serve upon opposing counsel, additional proposed instructions to the jury upon questions of law developed by the evidence and not disclosed by the pleadings." Refusal to give instructions proposed pursuant to this latter clause of Code of Civil Procedure, section 607, subdivision (a), has been held reversible error. (*Blanton* v. *Curry* (1940), 36 Cal.App.2d 575 [98 P.2d 221]; *People* v. *Blanks* (1944), 67 Cal.App.2d 132, 137 [153 P.2d 449].)

Since the pleadings did not indicate the highway to be a divided one or that the water truck turned or attempted to turn left into the dividing zone, the 525, subdivision (b), instruction involved "questions of law developed by the evidence and not disclosed by the pleadings" within the meaning of Code of Civil Procedure, section 607, subdivision (a). Respondents' whole theory of defense depended upon the sole responsibility of the water truck for the accident; hence the court's refusal to give this instruction would have constituted prejudicial error within the holding of *Blanton* v. *Curry, supra* (1940), 36 Cal.App.2d 575. Since no irregularity occurred, a new trial upon this ground would not have been proper.

Because the affidavit did not support any of the first three grounds contained within section 657 of the Code of Civil Procedure, the trial court properly struck it.

The trial court's action upon a motion for new trial rests within its discretion (*Fennessey* v. *Pacific Gas & Elec. Co.* (1938), 10 Cal.2d 538, 544 [76 P.2d 104]); the court's denial of the motion for new trial was proper; the instructions were correct and the evidence supports the judgment.

We affirm the judgment and order.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied June 13, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1960. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.