IN THE MATTER OF THE APPLICATION OF SHIRLEY G. SMITH FOR A WRIT OF HABEAS CORPUS.

No. 5179

October 11, 1966

418 P.2d 997

*Vargas, Dillon, Bartlett & Dixon,* of Reno, for Petitioner.

*Donald M. Leighton,* District Attorney, Humboldt County, for Respondent.

## OPINION

By the Court, ZENOFF, D. J.:

Petitioner was charged with involuntary manslaughter arising out of a collision which took place in Humboldt County along a stretch of Highway 80 between the automobile driven by deceased and a 60-ton gravel "Catscraper" being operated by petitioner.

Smith, the petitioner, was one of several equipment operators engaged in hauling gravel from a pit on one side of the highway to a point on the other side. At the intersection or crossing of the dirt road used by the equipment with the highway, a four-way signal light was installed by the contractor and was manually controlled by an employee of the contractor. It was not a

signal normally located at that point, but was erected in order to control traffic not only for the safety of the driving public but to expedite the movement of the heavy duty equipment.

At the preliminary hearing there was evidence that the company drivers were instructed to keep the equipment moving and that the signal man at the control would turn the light to red to stop public traffic on the highway when the gravel trucks came to the turn from the pit into the intersection.

On the day of the accident, February 23, 1966, the signalman, following established procedure at lunch time, turned the light facing the highway to green (which thereby caused the red to face the dirt road upon which the trucks approached the intersection), and went to his car to eat lunch. He thought all the trucks had pulled into their area for the same purpose, but he had overlooked two trucks. One truck came through the red light without incident and almost immediately thereafter came the petitioner. Gloria Hammond, driving along the highway, entered the intersection, was crushed by petitioner's truck and was killed in the collision.

Petitioner contends that the traffic light was not a legal signal and that, therefore, he was not engaged in the "commission of an unlawful act" as required to constitute involuntary manslaughter.

1. Involuntary manslaughter "shall consist in the killing of a human being, without any intent so to do, in the commission of an unlawful act * * *." NRS 200.070. If the signal was one contemplated by NRS 484.0036[1] petitioner's failure to obey the traffic signal was an unlawful act. We conclude that the charge was proper; also that, by reason of Smith's failure to stop at the red signal, probable cause was created warranting the magistrate to bind him over to district court for trial.

---

[1]NRS 484.0036. " 'Official traffic-control devices' defined. 'Official traffic-control devices' means all signs, signals, markings and devices, placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, guiding, or directing traffic."

NRS 408.195 provides that the State Highway Engineer has general supervision of matters relating to highways and his power or authority may devolve to a deputy (NRS 408.015). The engineer may restrict the use of any highway for the protection of the public (NRS 408.210(1)(a)), and determine locations for traffic control devices for the safe and expeditious movement of traffic (NRS 484.0080). In this case the contractor placed the signal at its location.

. We do not agree that the traffic signal was nonofficial merely because it was installed by the contractor at a highway repair site instead of by the State. The record clearly reflects that customary procedure was followed in like situations. By his silence, the deputy engineer of the State gave the necessary permission to its location and installation. Consequently, Smith was required to heed the direction of the red light regardless of the orders of his employers to keep the equipment moving, or the duty of the signalman to make certain all trucks were in the parking area before he retired for lunch, or the safe clearing of the intersection of the truck preceding him. The principal purpose of placing the signal there was the protection and safety of the public on the highway and he should have stopped.

There are exemptions from obedience of traffic controls.[2] These are narrowly confined to actual work on the surface of the highways, and do not embrace going to and coming from the locus of the work. Gonsalves v. Petaluma Bldg. Materials Co., 181 Cal.App.2d 320, 5 Cal. Rptr. 332 (1960); Hoffman v. Barker, 80 Idaho 372, 330 P.2d 978 (1958).

Smith's justification for going through the red light (notwithstanding the fact that, together with all of the

---

[2]NRS 484.0073. *"Persons working on highways; exceptions.* Unless specifically made applicable, the provisions of this chapter, except those relating to driving while intoxicated, shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

foregoing, the light was hard to see even had he been looking for it) is only exculpatory and must be presented and weighed at the trial on the merits. State v. Fuchs, 78 Nev. 63, 368 P.2d 869 (1962).

Writ denied.

THOMPSON and COLLINS, JJ., concur.