Filed 1/28/15  Berven v. County of San Joaquin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JAMES D. BERVEN , | C075243 |
| Plaintiff and Appellant, | (Super. Ct. No. 39200900228706CUPASTK) |
| v. | |
| COUNTY OF SAN JOAQUIN et al., | |
| Defendants and Respondents. | |

Plaintiff James D. Berven (Berven) sued the County of San Joaquin (County) and Eric Eugene Gargan (Gargan) for injuries Berven received when a County work truck driven by Gargan collided with Berven and his motorcycle.  The jury returned a special verdict answering "No" to the question, "Was defendant E[ric] G[argan] negligent?"

Berven's sole contention on appeal is that the trial court erred in giving special instruction No. 9, which allowed the jury to find that "[t]he Vehicle Code traffic laws do not apply to public employees and . . . motor vehicles . . . while actually engaged in work upon the surface of a highway, or work of installation, removal, repairing, or maintaining

1

official traffic control devices" but the laws "do apply to those persons and vehicles when traveling to or from their work." This instruction was based on Vehicle Code sections 21053 and 21054, which contain almost identical language.

We hold that the trial court correctly instructed the jury because it was a factual question whether Gargan was "actually engaged in work upon the surface of a highway, or work of installation, removal, repairing, or maintaining official traffic control devices." And there was evidence to show that Gargan was actually engaged in such work when the collision occurred, namely, that he was positioning his work truck to be a barrier necessary to ensure his and his coworker's safety in the work zone of the intersection.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Facts At Trial*

The collision occurred at the T-intersection of Tracy Boulevard and Howard Road. Howard Road runs east-west and dead ends into Tracy Boulevard, which runs north-south. Just before the intersection, Howard Road widens so there is room for two westbound lanes.

Earlier in the day before the collision, Gargan and his work partner, Billy Joe Hedrick, had partially painted traffic control devices on Howard Road close to where it intersects Tracy Boulevard. They had painted the word "STOP" in the westbound lane and had painted a portion of the stop bar limit line directly in front of the word "STOP." These "pavement markings" are considered "traffic control devices." Gargan considered his work zone to be the intersections where he was doing the work.

After this painting, Gargan drove the work truck away from the intersection, and he and Hedrick ate lunch.

After finishing lunch, Gargan began driving the work truck and Hedrick back to the intersection to complete their work, which included checking whether the paint was dry, painting the remaining portion of the stop bar limit line, and picking up the cones. As Gargan drove the work truck northbound on Tracy Boulevard approaching the intersection with Howard Road, he noticed two motorcycles behind him -- one being driven by Berven and the other by Berven's father.

When Gargan was about 200 or 250 feet south of Howard Road, he turned on his right turn signal, turned on four orange overhead blinking lights and raised his arrow board on the back of his truck that had flashing lights on the corners of the board. Gargan turned on the overhead lights and raised the arrow board to indicate that he might "have to do something outside of the normal realm of driving" like turn into an oncoming lane or make a sudden stop. As he got closer to Howard Road, Gargan started slowing down the work truck. Berven and his father were going faster than Gargan and both were gaining on him.

As Gargan entered the intersection, he slowed to nearly a stop so he could turn right. Gargan was attempting to position the work truck in the westbound lane of Howard Road so that the work truck would block cars from entering the work zone. The work truck was Gargan's "primary protective device." Gargan was intending to check whether the paint was dry, paint the remaining portion of the stop bar limit line, and then pick up the cones. As Gargan started turning the work truck's wheel to the right, Berven's father passed Gargan's work truck on the left. The noise from the father's motorcycle startled Gargan, so Gargan "kind of stopped turning the wheel." Berven "accelerated [his motorcycle] and continued around [Gargan's work truck] on the right-hand side." Both Berven's father and Gargan expected Berven to follow his father to the left on his motorcycle. Gargan looked in his right hand mirror before continuing his right turn. He did not see Berven on his motorcycle because Berven was in a blind spot. Gargan continued turning his work truck to the right. Berven's motorcycle hit the right

3

side mirror of Gargan's work truck, and one of Berven's legs was seriously injured. The collision occurred just in front of the word "STOP" that Gargan and Henrick had painted earlier. Berven's father recalled seeing an orange " 'Road Work Ahead' " sign on Tracy Boulevard about three or four miles before the collision.

## B

### *Theories Of The Case*

Berven's theory of the case as argued to the jury in closing was that Gargan was negligent in driving because his work truck "unpredictabl[y], dangerous[ly], and abrupt[ly]" slowed down and made an "inexplicable turn" without looking, causing the collision. Berven contended that special instruction No. 9 did not exempt Gargan from these alleged vehicle code violations because Gargan was not actually engaged in work -- he was driving there.

The County and Gargan's theory of the case in closing was twofold. One, Gargan was not negligent because he acted reasonably. And two, he was not negligent because the Vehicle Code traffic laws did not apply to Gargan, as he was "in the process of working . . . repairing and maintaining the traffic control devices." "And if that's what he's doing, he cannot be held liable for any Vehicle Code violation, assuming that he did commit one . . . [a]nd I don't think there's been any evidence that he did."

## C

### *Other Pertinent Instructions*

In addition to special instruction No. 9, the court instructed the jury on (among other things) Vehicle Code sections 22100 and 22107.

Vehicle Code section 22100 as it applies to right hand turns reads in pertinent part as follows: "(a) . . . Both the approach for a right-hand turn and a right-hand turn shall be made as close as practicable to the right-hand curb or edge of the roadway . . . ."

Vehicle Code section 22107 reads in pertinent part: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement

4

can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement."

DISCUSSION

Berven contends the trial court erred in giving special instruction No. 9, which allowed the jury to find that "[t]he Vehicle Code traffic laws do not apply to public employees and . . . motor vehicles . . . while actually engaged in work upon the surface of a highway, or work of installation, removal, repairing, or maintaining official traffic control devices" but that the laws "do apply to those persons and vehicles when traveling to or from their work." According to Berven, there was no evidence that Gargan and Hedrick were "engaged in work upon the surface of a highway, . . . or work of maintaining official traffic control devices." Rather, the uncontroverted evidence definitively established that Gargan and Hedrick were "traveling to . . . [their] work," making the immunity from any Vehicle Code violations inapplicable.[1]

As we explain below, Berven is wrong for two reasons. One, his contention is based on a reading of the evidence most favorable to him, which is not how a court decides whether there is sufficient evidence to give an instruction. And two, Berven relies on a case that he says supports him, *Gonsalves v. Petaluma Bldg. Materials Co.* (1960) 181 Cal.App.2d 320, but that case is readily distinguishable.

As to the first point, "a party is entitled to have the jury instructed as to his theory of the case provided (1) that he requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory. [Citation.] It is also well

---

[1] The evidence Berven relies on were passages of Gargan's deposition testimony that were read to the jury. In those passages, Gargan testified that the collision happened when they were returning back to the intersection to retrieve their work cones.

5

established that in determining whether [an] element . . . exists in a given case, the reviewing court must consider the evidence in the light most favorable to the party requesting the instruction." (*Bains v. Western Pacific R.R. Co.* (1976) 56 Cal.App.3d 902, 905.)

Here, since the County and Gargan requested special instruction No. 9, we look at the evidence most favorable to them to see if sufficient evidence supported the instruction. The evidence most favorable to the County and Gargan was that the collision happened when Gargan was attempting to position the truck in the westbound lane of Howard Road so that the truck would block cars from entering the work zone. The truck was Gargan's "primary protective device." Gargan's work truck therefore served as a safety barrier for him and Hedrick. The special instruction was based on Vehicle Code section 21053, which reads in pertinent part as follows: "This [Vehicle] code . . . does not apply to public employees and . . . motor vehicles . . . while actually engaged in work upon the surface of a highway, or work of installation, removal, repairing, or maintaining official traffic control devices. This code does apply to those persons and vehicles when traveling to or from their work." It was also based on Vehicle Code section 21054, which reads in pertinent part as follows: "The provisions of this division do not apply to the duly authorized representatives of any public agency while actually engaged in performing any of the work described in Section 21053 but apply to such persons when traveling to and from such work."

Based on the evidence we have just recounted, a jury could find that Gargan was not simply traveling to his work destination when the collision occurred; rather, he had reached his work destination and was engaging in that work by erecting a barrier (the work truck) necessary to ensure his and Hedrick's safety in the work zone. Thus, in the words of the statutes on which special instruction No. 9 was based, a jury could find that the Vehicle Code did not apply to Gargan and his work truck because he was actually engaged in work upon the surface of a highway, or work of installation, removal,

6

repairing, or maintaining official traffic control devices and was not just traveling to or from his work.

Our conclusion is the same, even considering Berven's second point, which is that *Gonsalves* supports him. As we explain, *Gonsalves* is distinguishable. In *Gonsalves*, the appellant challenged giving instructions pertaining to alleged violations of the Vehicle Code because, according to the appellant, the Vehicle Code violations did not apply because the water truck that was involved in the collision was actually engaged in work upon the surface of the highway. (*Gonsalves v. Petaluma Bldg. Materials Co.* 181 Cal.App.2d at pp. 326-328.) The appellate court held that the water truck was traveling to work, so the exemption did not apply. (*Id*. at pp. 327-328.) The uncontroverted evidence was that the water truck was on the northbound roadway outside of the construction zone, and the only area that was marked as a construction zone was 500 feet of the southbound roadway. (*Id*. at pp. 325-326, 328.)

Here, by contrast, there were facts showing that Gargan and his work truck were inside the work zone (Gargan considered his work zone to be the intersections where he was doing the work) and that the positioning of his work truck (i.e., a safety barrier) that Gargan was engaged in when the collision occurred was actually work "upon the surface of a highway, or work of installation, removal, repairing, or maintaining official traffic control devices" (Veh. Code, § 21053). Therefore, the trial court here properly gave special instruction No. 9.

## DISPOSITION

The judgment is affirmed. The County and Gargan shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

7

      ROBIE      , Acting P. J.

We concur:

     DUARTE     , J.

     HOCH     , J.