[Civ. No. 3033.    Third Appellate District.—August 28, 1926.]

CITY OF SACRAMENTO (a Municipal Corporation), Appellant, v. WILLIAM F. L. HUNGER et al., Respondents.

[1] NEGLIGENCE — DAMAGE TO POLICE AUTOMOBILE — DISREGARD OF SIREN—BURDEN · OF PROOF.—In an action by a city for damages for injury to a police automobile belonging to said city, as the result of a collision at a street intersection between it and the automobile of defendant, also for expenses paid by the city for medical services rendered to one of its police officers for physical injuries sustained by reason of said collision, where the city relies upon the provision of section 133 of the State Vehicle Act requiring that upon the approach of any police department vehicle, and upon the sounding of a signal by such police department vehicle, "every other vehicle shall immediately be moved to a position as near as possible and parallel to the right-hand curb, and shall remain there until the police . . . department apparatus has passed such vehicle," the burden is upon the city to prove, by a preponderance of evidence, that the defendant at some time before entering the intersection heard the sound of the siren on the police car but failed or omitted to comply with said provision of the act.

[2] ID. — HEARING OF SIREN — EVIDENCE — INFERENCE — PROVINCE OF JURY.—In such action, where there is ample evidence that the

---

1. Motor vehicle regulations as applicable to police vehicles, note, 19 A. L. R. 459.

siren of the police automobile in question was sounded continuously from the time it left headquarters to the time at which the collision occurred, but there is no direct evidence that defendant heard the siren at any time before the accident, there being no admission on his part that he did so, the question of whether he heard the siren is one of inference to be drawn by the jury from all the evidence in the case.

[3] ID.— PRUDENT OPERATION OF POLICE AUTOMOBILE — ARBITRARY EXERCISE OF RIGHT OF WAY — INSTRUCTIONS. — In such action, an instruction that the law requires "that any person operating or driving a motor vehicle, and this includes a police automobile, upon the public streets, shall operate or drive the same in a careful or prudent manner and at a rate of speed not greater than is reasonable or proper, having regard to the traffic and use of the street, and that no person shall operate or drive such motor vehicle on a public street at such rate of speed or in such manner as to endanger the life or limb of any person or the safety of any property," is not rendered prejudicial to the plaintiff by reason of the omission therefrom of the provision of section 132 of the Motor Vehicle Act relating to the arbitrary exercise of a right of way by the police automobile.

[4] ID. — CARE REQUIRED OF POLICE AUTOMOBILES. — Police automobiles driven over the streets of a city in the chase or apprehension of violators of the law, while not restricted as to the maximum speed at which they may be driven, may not be so driven with absolute indifference to others legitimately using such streets or with reckless disregard of the lives and property of others; and the provision of section 132 of the Motor Vehicle Act that "police and fire vehicles shall have right of way over all other vehicles" does not relieve the driver of such vehicles from the duty of exercising the proper degree of care when operating them over and along the streets of the city.

[5] ID. — POLICE AUTOMOBILES — CARE REQUIRED. — When operating police automobiles on and over the streets for the purpose of such vehicles, a greater amount of care is required than in those cases of the use of motor vehicles where the maximum limit of speed is fixed by the law.

[6] ID.—HEEDLESS OPERATION OF POLICE AUTOMOBILE—ERRONEOUS INSTRUCTION—ABSENCE OF PREJUDICE.—In such action, by the use of the word "had" in the court's instruction that "those in control of the police automobile had no right to continue their way across the intersection heedless of other vehicles, which might be lawfully using the intersection," said instruction assumed that the driver of the police automobile did proceed over and across the intersection "heedless of other vehicles which might be lawfully using the intersection," and, as so phrased, the instruction in effect involved an invasion of the province

of the jury, upon whom alone rested the duty of determining and deciding upon the evidence whether those in control of the police automobile did or did not "continue their way across the intersection heedless of other vehicles," etc.; but, considering the instructions as a whole, it could not be said that the grammatical error in said instruction was of sufficient significance to mislead the jury or require a reversal of the judgment.

(1) 42 **C. J.**, p. 1233, n. 27, p. 1236, n. 34.    (2) 23 **C. J.**, p. 35, n. 74, 75, p. 44, n. 92, p. 45, n. 93; 42 **C. J.**, p. 1240, n. 72, p. 1246, n. 34, p. 1286, n. 87; 38 Cyc., p. 1902, n. 48.    (3) 4 **C. J.**, p. 918, n. 42; 42 **C. J.**, p. 1274, n. 87, p. 1276, n. 10.    (4) 42 **C. J.**, p. 1028, n. 64, 69.    (5) 19 **C. J.**, p. 820, n. 77; 42 **C. J.**, p. 1028, n. 69; 29 Cyc., p. 423, n. 35, p. 427, n. 73, 74.    (6) 4 **C. J.**, p. 1037, n. 83; 38 Cyc., p. 1778, n. 73, p. 1779, n. 75, 76.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. L. Shinn, City Attorney, and Chas. J. Hasman, Assistant City Attorney, for Appellant.

Evan J. Hughes for Respondents.

HART, J.—The plaintiff in this action sues for damages in the total sum of twelve hundred dollars for damage alleged to have been done to a police armored automobile belonging to said city in a collision between said automobile and the automobile of the defendant, William F. L. Hunger, and also for expenses paid by plaintiff for medical services rendered to one of its police officers for physical injuries sustained by the latter by reason of said collision, said officer being in the police car at the time of the mishap.

The cause was tried before a jury and a verdict rendered for the defendants. The appeal is by the plaintiff from the judgment entered upon said verdict.

The defendant William J. Hunger is the father of the other defendant, the latter, so the complaint states, being, at the time of the collision, a minor.

The accident occurred between 11 and 12 o'clock on the night of the tenth day of January, 1925, at the intersec-

tion of Seventh and L Streets, in the City of Sacramento. Just prior to the happening of the collision the police department received a notice by telephone that a burglar was carrying on criminal operations at or near a residence in the neighborhood of Seventh and V Street, in said city. Immediately two police officers, George A. Kaminsky and A. P. Noone, were dispatched to the scene of the burglarious operations in an armored automobile and drove from the police station at Sixth and H Streets to Seventh Street, thence along the last-named street in a southerly direction. The police car and that of the defendant William F. L. Hunger, driving over and along L Street in a westerly direction, collided, with the result that the police car was seriously damaged and Officer Noone likewise injured, and the car of Hunger also damaged.

The contention of the plaintiff is that the verdict **is** minus sufficient evidentiary support and that prejudicial error was committed by the trial court in certain particulars in its charge to the jury. In its opening brief the plaintiff makes the following concession: "It may be granted that at the time the two cars arrived at the intersection, as above stated, it was too late to avoid an accident, and that an emergency was created thereby which would relieve either of the operators of the automobiles from liability for the accident itself, because, assuming that the defendant, William F. L. Hunger, by proper presence of mind, might have obviated the collision with the police car, the emergency was so great at that time he could not be chargeable for taking the wrong method."

The following further statement, however, is made in said brief in connection with the foregoing admission: "The police car was equipped with a siren which was sounded continuously from the time of leaving the police station at 6th and H Streets, until almost the instant of the collision at 7th and L Streets, the distance from the Police Station to the point of the accident being approximately five city blocks."

It will thus be observed that the plaintiff, in its claim that the accident was due to the negligence of the defendant Wm. F. L. Hunger, relies entirely upon the proposition that he (said Hunger) failed, upon the sounding of the siren or signal attached to the police car, to obey the

mandates of section 133 of the State Vehicle Act. Said section provides: "Upon the approach of any police or fire department vehicle, it shall be the duty of the operator of any street car, upon the sounding of a signal by such police or fire department vehicle, to stop such street car forthwith, unless at the time such street car is crossing an intersection of the public highways, in which event it shall be operated so as to clear the intersection of the highways and then stopped, and every other vehicle shall immediately be moved to a position as near as possible and parallel to the righthand curb, and shall remain there until the police or fire department apparatus has passed such vehicle."

The point that the verdict is destitute of sufficient evidentiary support is practically reduced to the simple question whether the siren signal connected with the police car was sounded or being sounded as said car was proceeding along the streets to the point of destination of the officers, and, if so, whether the defendant Wm. F. L. Hunger at any time heard it.

The two officers who were in the car, one (Kaminsky) at the wheel and at the same time manipulating the siren connection so as to give the usual warning of the approach of the car, testified that the speed at which said car was driven at no time exceeded that of thirty-five miles an hour and that the siren was continually sounded as they were passing along the streets from the time they (the officers) left the police station to the time they reached the point where the collision occurred. Each of the officers stated that "the siren was going all the time." Six other parties who, just before and at the time of the collision, were on the streets along which the police car was then being driven in a southerly direction from the point where the police station is located, each testified that he heard the sound of the siren from the time his attention was attracted to said car by the signal sound until the car reached Seventh and L Streets, where the collision took place. Some of these witnesses were, at the time the accident happened, within a few yards of the point of collision, one or two not so near and others practically at the corner.

The defendant Wm. F. L. Hunger testified that he was driving his car on L Street in a westerly direction; that he had been driving at the rate of about fifteen miles an hour and continued to drive at that rate of speed as he approached and was in the act of crossing L Street at Seventh; that after he had reached a point near the center of the intersection of Seventh and L Streets his attention was attracted to the police car by the rapid rate of speed at which the latter car was being driven and also the headlights thereof; that, instantly apprehending the danger of a collision with the approaching police car, and in the hope of avoiding a collision, he suddenly swerved his car to the left or in a southerly direction—the same direction in which the police car was going—but had hardly more than made that movement when the two cars collided. He further testified that, when first his attention was attracted to the police car, said car was at a point a trifle south of the alley between K and L Streets, the first-named street being north of the last named, and that said car, according to his best judgment, was traveling at a rate of speed of between forty and fifty miles an hour. Said defendant did not say whether he at any time heard the sound of the siren attached to the police car, nor was he asked, either on direct or cross-examination, whether he heard the siren.

A witness by the name of Jackson, residing in the alley between L and M Streets, and whose home "faces towards L Street," testified (for the defendants) that he was in his house engaged in a conversation with one Jim Brown, when he heard the "crash" caused by the collision. He testified that, prior to hearing the "crash," he did not hear the sound of the siren on the police car. He stated that he could not fix the time in the evening at which the collision occurred, but that at the time "of the accident it was getting dark—along getting dusk. I was sitting," he said, "in the middle room of my 'shanty.' " J. J. Reed, a witness for the defendants, testified that he was employed in a garage at 624 L Street—not far distant from the corner of Seventh and L Streets—and that he was in the office of the garage at the time of the collision and heard the noise caused by the impact between the two cars, but that he did not hear the siren prior to the collision. Reed stated that the office of the garage was situ-

ated on the west side of the building—that is, the side nearest to L Street. He testified that he was familiar with the sound produced by the siren on the police car and that his hearing was fairly good.

Wm. Garvey, a witness for the plaintiff, testified that he was walking along Seventh Street, going south, and not far from the corner of Seventh and L Streets when he heard the sound of the siren on the police car; that, looking back, he saw the police car about midway between J and K Streets, going south on Seventh; that he, near the same time, saw the car driven by defendant Wm. F. L. Hunger enter Seventh Street on L from the east, traveling at the rate of about twenty miles an hour; that he (said defendant), proceeding toward the center of the intersection of the two streets, had reached a point from five to ten feet from the east line of Seventh or "pretty near the turning block" in the center of the intersection, when the police car, traveling at the rate of forty or fifty miles an hour, and the said defendant's car collided.

In rebuttal one Menzell was called by plaintiff and testified that he was with defendants' witness Reed in the garage near Seventh and L Streets when the collision occurred, and that at and just prior to that time said Reed was asleep in a chair. Reed, as above shown, testified that he did not hear the siren before the accident happened.

The foregoing embraces substantially all the testimony given in the case.

[1] The burden was, of course, upon the plaintiff to prove by a preponderance of the evidence the negligence upon which it relies to establish a case under the averments of its complaint upon the theory advanced, to wit: That the defendant William F. L. Hunger at some time before reaching the eastern line of Seventh Street heard the sound of the siren, but failed or omitted immediately to move "to a position as near as possible and parallel to the right-hand curb of the sidewalk" and remain there until the police car "passed such vehicle."

[2] The plaintiff contends that the verdict is wholly without support. The argument is that, since there was no contradiction of the testimony of the witnesses for the plaintiff that the siren on the police car was continually sounded from the time it was first heard as the car was

between J and K Streets going south on Seventh Street to the time at which the collision occurred, there was nothing left for the jury to do but to find that the defendant Wm. F. L. Hunger must have heard and did hear the siren in time to have stopped his car and removed it to the curb of the sidewalk on L Street, in the manner prescribed by the vehicle law, before the police car reached the intersection of Seventh and L Streets where the accident happened. If the verdict had been for the plaintiff a court of review would no doubt be required to hold, upon the evidence as it is disclosed by this record, that the verdict implied a finding that the said defendant did hear the siren in sufficient time to have stopped his car as indicated by the law and thus have avoided the collision, and further required to hold that such implied finding was afforded sufficient support, or, in other words, be compelled to hold that we could not say that such finding was devoid of sufficient evidentiary support to sustain it and, consequently, the verdict. We hold that the position of this court with respect to the verdict as it now stands is precisely the same as it would be in the case assumed or supposed. There can be no doubt that there is ample testimony to show that the siren was continually sounded from the time the police car started from police headquarters to the time at which the collision occurred, but, as in the very nature of the situation, there could be no direct testimony that said Hunger at any time heard the siren before the accident, except by his own admission to that effect, and this he did not make. Obviously, the question whether said Hunger heard the siren was one of inference to be drawn by the jury from all the testimony in the case. Any assumption that where the testimony upon an issue of fact is all one way the presumption is that it speaks the truth as to such issue would be fallacious, unless the case furnishes an instance where the particular facts proved are such as necessarily or upon their face can lead to but one conclusion, in which case the law expressly directs that such conclusion or deduction shall be made (Code Civ. Proc., sec. 1959). This case presents no such instance, however. To the contrary, it is the usual case where the ultimate issue must be established, if at all, upon the proof of the facts and circumstances inhering in

the transaction itself. In other words, as above stated, the case is one in which it is for *the jury,* and not for the law, to determine from the evidence whether the fact sought and necessary to be proved has been proved, and the process of such determination is that of inference, as defined by section 1960 of the Code of Civil Procedure, as follows: "An inference must be founded: 1. On a fact legally proved; and, 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the persons whose act is in question, the course of business, or the course of nature."

We are not prepared to say what course this or any other court of review would take if there was no other testimony in the record than the testimony showing or tending to show that the siren on the police car was continually sounded from the time it left the police station to the time of the collision. If, though, a reviewing court should be compelled, in such circumstances, to reverse the cause for want of sufficient proof to support the result arrived at below, it would be required to plant its judgment, not upon the proposition that such testimony was to be presumed to be true, but solely upon the ground that the question of evidentiary support was a question of law, and, therefore, the verdict, as a matter of law failed of sufficient evidentiary support. But the record here presents an evidentiary conflict. The defendant Wm. F. L. Hunger testified that the rapid movement of the police car and its headlights were what first attracted his attention to said car, and that was after he had entered Seventh Street and had proceeded some ten feet from the eastern line of L Street toward the center of the intersection. As shown, he did not say that he did not hear the siren nor did he say that he did hear it. He was asked no question either on direct or cross-examination whether he did or did not at any time hear the siren. Counsel for plaintiff contend that, because he did not say that he did not hear the police signal, it must be presumed that he did hear it. As pointed out above, this court can indulge no such presumption. To the contrary, this court must assume that the jury concluded from his statement that he was attracted to the police car by the rapid speed at

which it was traveling down Seventh Street and its head-
lights and that there was nothing else in connection with
said car which attracted his attention or gave him any
warning of its approach to L Street.   As above stated herein,
there was other testimony contradictory of that of the plain-
tiff upon the question, itself sufficient, we think, to pro-
duce a substantial conflict in the evidence thereon.   The
witness Jackson's testimony, as seen, was to the effect that,
continuously for some time before and at the time the col-
lision occurred, he was in his house, situated near Seventh
and L Streets; that he heard the noise caused by the colli-
sion, but did not at any time hear the siren.   The witness
Reed, who was in a garage at Seventh and L at the time
of the accident, testified, as above shown, that he did not
hear the siren before the collision, but heard the crash.
It is true that a witness in the garage where Reed was
at the time testified that he heard the siren and the noise
from the impact, and further that Reed was and had been
asleep in a chair at and prior to the time of the collision.   It
is also true that the witness Jackson could not state the
hour of the night that the accident happened.   In fact,
he appears to have been unable to say whether it was
early in the evening or late at night.   But these appar-
ent weaknesses in the testimony of these witnesses were
matters for the jury to consider in weighing or appraising
the probative value of their testimony.   Jackson positively
stated that he did not hear the siren prior to the collision,
and the jury had the right to believe that statement, not-
withstanding the inability of the witness to fix precisely or
even approximately the time at which the accident hap-
pened.   The witness Reed was not asked on cross-examina-
tion whether he was and had been asleep in the chair
down to the time of the collision, nor was he recalled to
the witness-stand by defendants and interrogated regard-
ing the matter.   The witness, if available after the state-
ment was made that he was asleep as indicated, should
have been brought back to the stand and given an oppor-
tunity to say whether he was or was not asleep until
awakened by the crash, as is the implication from the testi-
mony to that effect.   But this, too, was a matter which
involved the question of the probative force of Reed's
testimony that he did not hear the siren, and it was obvi-

ously for the jury to decide whether Reed was or was not asleep at the time. The witness who testified that Reed was asleep did not say how he knew that he (Reed) was asleep other than from the fact that he (Reed) was sitting in a chair leaning against the wall. Of course, it does not necessarily follow from the fact that a person may be sitting quietly in a chair, even with his eyes closed, that he is asleep. The jury, in view of Reed's statement that he did not hear the siren in the absence of an explanation by him (if it was true) that the reason he did not hear it was because he was and had been asleep until he heard or was awakened by the crash, could most reasonably have concluded that Reed was not asleep while sitting in the chair. At any rate, it is certain that this court cannot say, as a matter of law, that the testimony shows that Reed was asleep at the time indicated. That there is a conflict in the evidence upon the question whether defendant Wm. F. L. Hunger heard the siren at any time before he had entered the intersection cannot be doubted, and, as before stated in other forms of expression, it was entirely with the jury to resolve that conflict. "The weight to be given to negative testimony of the character of that produced by the plaintiff is a question for the jury, and 'it has frequently been held that negative evidence of this character is sufficient to sustain a verdict, . . . even though it conflict with other evidence to the effect that a warning was actually given.' *Keena* v. *United Railroads of San Francisco,* 197 Cal. 148 [239 Pac. 1061]; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 Pac. 709]; *Jones* v. *Southern Pacific Co.,* 74 Cal. App. 10 [239 Pac. 429]." (See *Carey* v. *Pacific Gas & Electric Co.,* 75 Cal. App. 129 [242 Pac. 97, 98].)

[3] The court gave the following instruction: "The law requires that any person operating or driving a motor vehicle, *and this includes a police automobile,* upon the public streets, shall operate or drive the same in a careful or prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the street, and that no person shall operate or drive such motor vehicle on a public street at such rate of speed or in such manner as to endanger the life or limb of any person or the safety of any property."

Appellant contends that the above instruction, in so far as it includes police automobiles within the purview of the general rule regulating and prescribing the degree of care and the speed limit of motor vehicles driven over the streets and other highways of the state, is violative of the express provisions of the Motor Vehicle Law of 1923 relating to the use of streets by police automobiles, and that the giving of the instruction was, therefore, seriously prejudicial to its rights. Section 113 of the Motor Vehicle Act (Stats. 1923, pp. 517, 553) prescribes the speed of motor vehicles according to the different degrees of peril to others using the streets and highways arising and existing by reason of the varying conditions necessarily characterizing the public thoroughfares. The speed limit as so prescribed ranges from fifteen to thirty-five miles an hour, according as such conditions may require in the very nature of the situation.

Section 120 of said act provides as follows: "The provisions of this act prescribing the speed for vehicles shall not apply to vehicles of any city, city and county, or county or of the State of California when such vehicles are being operated in the chase or apprehension of violators of the law, or of persons charged with or suspected of any such violation, nor to fire department vehicles when traveling in response to a fire alarm nor to ambulances or the vehicles of licensed physicians when actually traveling in response to emergency calls."

Section 132 of said act provides: "Police and fire department vehicles shall have the right of way over all other vehicles but must be operated with due regard for the safety of all persons using the public highway. This provision shall not protect the driver of any such vehicle or his employer or principal from the consequence of the arbitrary exercise of such right of way."

The specific objections urged by appellant against the instruction are: That it "entirely eliminated the question of the arbitrary exercise of a right of way by the police automobile"; that it "erroneously included police automobiles in the category of vehicles which would have to be operated at such a rate of speed, or in such manner, as not to endanger the life of any person, or the safety of any property." The first stated ground of objection is apparently based on the last clause of section 132 of the Vehicle Act and herein-

above quoted. The omission from the instruction of a statement embracing that clause of said section certainly could not have prejudiced the plaintiff. It involves a positive mandate against any attempted arbitrary use of the streets by police automobiles when in active operation in pursuance of the purposes for which such vehicles are maintained by the police department of a city, and the failure to state that proposition to the jury was to benefit rather than to injure the appellant. Besides, the mandate of that clause of said section is diametrically opposed to the theory involved in the objection urged by appellant against the instruction secondly hereinabove stated. [4] To hold that, because the statute fixes no maximum limit of speed at which police automobiles may be driven over the streets of a city when they are being operated "in the chase or apprehension of violators of the law," they may be so driven with absolute indifference to others legitimately using such streets, or with a reckless disregard of the lives and property of others, would be to fly squarely in the face of the last clause of section 132. Indeed, in the absence from our statutes of such a provision, no court would hold that such vehicles, although not expressly restricted by the statute to a specified speed rate when used for their purposes, could be negligently or carelessly operated or in such manner as necessarily to imperil the lives or the property of others. The law permits a speed limit of thirty-five miles an hour for motor vehicles over the highways outside of the limits of a city, yet the law holds a driver of such a vehicle over such highways, when employing the limit of speed fixed in such a case, to the exercise of reasonable care in thus operating an automobile. Obviously, the same is equally true where there is no restriction whatever upon the rate of speed at which automobiles used for certain special purposes may be driven. Nor does the provision of section 132 of the statute that "police and fire vehicles shall have right of way over all other vehicles" relieve the driver of such vehicles from the duty of exercising the proper degree of care when operating them over and along the streets of the city. In fact, the language of the section following that just quoted declares that such vehicle "must be operated with due regard for the safety of all persons using the public highway." The court below in one of its instructions in the instant case correctly stated

to the jury that the exemption by the State Vehicle Law of police automobiles from the speed limits prescribed by said statute "does not constitute a license" to the driver of a police vehicle to operate such vehicle over the city streets regardless of the safety of other persons using such streets. [5] It may be added that, when operating police automobiles on and over the streets for the purpose of such vehicles, the rule should be and is that a greater *amount* of care is required than in those cases of the use of motor vehicles where the maximum limit of speed is fixed by the law. We are not thus to be understood to say that a greater degree of care, as that expression technically implies, should be required in such cases as the present. "Due care" is a relative expression and means that degree of care which the circumstances of a particular case require, and while "reasonable care" only is required to be exercised in the operation of police automobiles when they are employed in "chasing and apprehending criminals," a greater amount of such "reasonable care" should be exercised when using motor vehicles under the indicated circumstances.

[6]   The most serious question presented here grows out of the following language of one of the given instructions: "Those in control of the police automobile *had* no right to continue their way across the intersection heedless of other vehicles, which might be lawfully using the intersection." By the use of the word "had" in the quoted sentence the instruction assumes that the driver of the police automobile did proceed over and across the intersection of Seventh and L Streets "heedless of other vehicles which might be lawfully using the intersection." As so phrased, the instruction in effect involved an invasion of the province of the jury, upon whom alone rested the duty of determining and deciding upon the evidence whether those in control of the police automobile did or did not "continue their way across the intersection heedless of other vehicles," etc. But other than this error, the court's charge, as a whole, contained a clear and correct statement of the rules or the principles of law pertinent to the issues as made by the pleadings and brought into the case by the proofs, and from the instructions other than the one complained of here no intelligent person could fail to derive the information that the question whether the driver of the police car in continuing across the intersection

did or did not exercise reasonable or due care or was or was not heedless of the safety of other vehicles which might then be lawfully using the intersection, was solely one for the jury's determination. We cannot persuade ourselves that the jury, even if they noticed the inadvertent grammatical error characterizing the criticised language of the instruction, attached any significance to it, but were solely governed by the plain declarations of other parts of the court's charge to the effect that the question whether the plaintiff's agents who drove the police automobile were at any time heedless of the safety of others as they were operating said automobile was one which it was wholly their duty to decide upon all the evidence before them. Instructions must be considered as a whole or a single charge upon the law, and where, in thus viewing the instructions, it is clear, as is the case here, that a correct statement of all the principles of law pertinent to the issues are set forth therein, an error in the statement of some rule, elsewhere correctly stated in the charge, must be of a very serious nature or the instruction containing the error thereby rendered so inconsistent with the other instructions upon the same proposition as necessarily to conduce to confusion in the minds of the jury as to the true rule, before an appellate court will reverse a case for that cause alone. Particularly is this true where, as here, the error has been produced by an obvious grammatical error and which presents a question merely of grammatical nicety in the phrasing of an instruction.

There are other instructions criticised, but upon practically the same ground upon which the instruction first hereinabove considered is here objected to. It is, therefore, not necessary to give those assignments special attention herein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.