Filed 7/31/23  Salto v. Empire Transportation Services CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CASSANDRA SALTO, | D080075 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. RIC1706150, RIC1808500) |
| EMPIRE TRANSPORTATION SERVICES, INC. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Riverside County, L. Jackson Lucky, IV, Judge.  Affirmed.

Law Offices of Jacob Emrani and John F. Gerard for Plaintiff and Appellant.

Horvitz & Levy, Eric S. Boorstin and John Barrow Sprangers; Booth and Hillary Arrow Booth for Defendants and Respondents.

Plaintiff and appellant Cassandra Salto appeals from a judgment in favor of defendants and respondents Empire Transportation, Inc. (Empire)[1] and Stephanie Caceres following a bench trial on Salto's negligence action arising from a multi-vehicle collision that occurred when a police officer engaged in an high-speed pursuit collided with a bus driven by Caceres while in Empire's employ.  The police vehicle entered an intersection and struck the bus, which pushed the bus into Salto's stopped vehicle, causing Salto personal injuries.  Before trial, on an unopposed motion, the trial court granted summary judgment in favor of the City of Riverside (City) and the officer involved in the chase on grounds they were immune from liability under Vehicle Code sections 17004 and 17004.7, as well as Government Code section 815.2.  The court later determined that its summary judgment ruling did not bar litigation of the police officer's comparative fault under collateral estoppel or res judicata.  Following trial on the merits, the court found Caceres was not negligent per se based on an asserted violation of Vehicle Code section 21806.  It found Caceres was negligent in that she did not look to her right before she entered the intersection, but that her negligence was not a substantial factor in causing Salto's injuries, and thus defendants were entitled to judgment in their favor.  Alternatively, it found Caceres was only one percent at fault, and the officer was 99 percent at fault.

On appeal, Salto contends the court erred by failing to apply collateral estoppel or res judicata to bar evidence and argument of the police officer's negligence during the pursuit.  She further contends the court misapplied the burden of proof on her claim that Caceres was negligent per se.  Because the trial court relied on dash camera video evidence of the incident (trial exhibit

---

[1]     Defendants state that Empire was erroneously sued as Empire Transportation Services, Inc.

2

Nos. 1 and 2) as support for some of its findings, Salto asks this court to review that evidence, arguing we "can determine for [ourselves]" Caceres's negligence and causation.

We hold Salto's causation arguments misperceive the applicable standard of review. As we explain below, the court weighed and drew inferences from the video and other evidence in reaching its conclusions about the absence of causation, so we must engage in sufficiency of the evidence review. Salto has not demonstrated the court's findings on causation are unsupported by substantial evidence or are otherwise legal error. Salto's additional arguments fail to demonstrate prejudice because of this deficiency and others. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In June 2016, Salto was involved in a collision with a shuttle-type bus being driven by Caceres for Empire. At the time, Caceres was traveling in the rightmost southbound lane of traffic through an intersection on a green light, when then Riverside Police Department Officer Eric Hibbard (now retired), driving eastbound and engaged in a high-speed pursuit of a suspected shoplifter driving a stolen vehicle, went through the red light and cross-traffic in the intersection, hitting the bus. Hibbard's police car pushed the bus into Salto's vehicle, which hit another vehicle, during which Salto

---

[2] Salto does not dispute the accuracy of the trial court's factual recitation of the accident in its statement of decision. Thus, we state the bare facts of the accident from the statement of decision, and detail other facts as necessary below. In doing so, we view the evidence in the light most favorable to the prevailing defendants, resolving any conflicts in their favor. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 574, citing *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 787.)

sustained injuries.  Hibbard had lights and sirens activated on his vehicle during the pursuit.  Caceres was familiar with the busy intersection where the accident occurred; she was aware vehicles ran through the red light so she would have to be extra careful crossing there.

Following the incident, two bus passengers sued Empire, City, and the Riverside Transit Agency (RTA) for personal injuries.  Empire answered, as did City, which also filed a cross-complaint against Empire and RTA for equitable indemnity, contribution and a judicial declaration of its right to such relief.  Empire and RTA filed their own equitable indemnity and contribution cross-complaint against City and Hibbard.

Salto also filed a personal injury action against City, Hibbard, and Caceres; she later named Empire as an additional defendant.  The court consolidated Salto's and the passengers' actions.

In January 2019, City and Hibbard moved for summary judgment on the consolidated personal injury actions and on Empire/RTA's cross-complaint.  They argued that as a matter of law they were immune from liability and civil damages under Vehicle Code sections 17004 and 17004.7, as well as Government Code section 815.2, subdivision (b), because City had adopted, promulgated and trained on a pursuit policy meeting Vehicle Code section 17004.7 requirements, and Hibbard had acknowledged and complied with the training requirements.  City and Hibbard argued this result was compelled by *Ramirez v. City of Gardena* (2018) 5 Cal.5th 995.

Neither Salto nor the bus passenger plaintiffs opposed the summary judgment motion.[3]  Salto agreed to dismiss her complaint against City and Hibbard.  Thereafter, the court granted the motion for summary judgment as

---

[3]    Empire, City and Hibbard dismissed their cross-complaints for equitable indemnity and contribution before trial.

4

to the consolidated complaints. It based its ruling on "uncontroverted evidence . . . that . . . Hibbard was driving a marked police car, with active lights and siren, chasing a suspect car when his car got in a collision with an RTA bus"; that Hibbard had attended Riverside Police Department annual pursuit policy training six months before the incident; and that the Riverside Police Department's adopted pursuit policy, which it incorporated into a policy manual, complied with statutory requirements.

The case proceeded to trial on Salto's personal injury complaint and negligence claims against Empire and Caceres. At trial, defendants' theory in part was that Hibbard solely caused the accident. They argued: "It is clear that he was negligent. He was going way too fast. He violated Riverside police policy. He violated . . . all rules and regulations applicable to speed, pursuit, and the regulations that bind . . . Hibbard as well as the Riverside Police Department." They argued Caceres was "alert and attentive" and conducted herself reasonably. According to defendants, Caceres did not see or hear the police vehicle just as no other cars saw or heard it.

Caceres testified that before she began to move forward into the intersection that day, she did not see any car running the red light, nor did she see the police vehicle or hear its siren before the impact. However, right as the impact occurred she reacted by trying to steer the bus out of the way. She acknowledged that she told an investigating police officer that she saw the stolen car pass in front of her at a high rate of speed, heard the sounds of an emergency siren, looked to her right and observed the police car about to hit her, but testified her memory was impacted by the accident. Caceres testified she intended to be truthful when speaking to the investigating officer. Salto and another person who had stopped at the intersection in their

5

vehicles testified they heard a chasing helicopter and emergency sirens before the light turned green for them to proceed. Salto testified that as a result, she did not move forward into the intersection. Salto heard the noises coming from her left and saw the police car "right after the [stolen car] passed through the intersection." Salto's driver's side window was down at the time, as was the other driver's.[4] Salto agreed the entire incident—the suspect's speeding car passing her, the police car hitting the bus, and the bus being pushed into her car—happened in seconds.

Following the close of testimony, the court issued a statement of decision explaining the factual and legal bases for its decision. (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718 [statement of decision "provides the trial court's reasoning on disputed issues and is [the] touchstone to determine whether or not the trial court's decision is supported by the facts and the law"]; see also *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 [statement of decision explains " 'the factual and legal basis for its decision as to each of the principal controverted issues at trial' "].)[5] The court rejected

---

[4]    Salto also testified that two vehicles in front of her proceeded to move into the intersection after the light turned green, but she stopped at the stop line. She said she "was never planning on going forward" because she "heard that stuff coming from a mile away." The other driver had both of his windows down.

[5]    "[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981; see Code Civ Proc.,

Salto's theory that Caceres was negligent per se for violating Vehicle Code section 21806,[6] stating that to prove that theory, Salto had to establish under *City of Sacramento v. Hunger* (1926) 79 Cal.App. 234 that Caceres saw the police vehicle's lights or heard the siren. The court found Salto failed to meet her burden; that "[n]othing impeached" Caceres's testimony denying seeing the police car's lights or hearing the siren. It stated: "Caceres testified the bus was loud and she was accelerating, so she didn't hear the siren until just before Hibbard drove into her bus." The court explained how the actions of

---

§ 634.) Here, the record contains no indication and Salto does not assert that she objected to the court's statement of decision or brought omissions or ambiguities to its attention. Accordingly, we "infer the trial court made findings favorable to the prevailing part[ies]—[defendants]—on all issues necessary to support the judgment" as long as those findings are supported by substantial evidence. (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016) 6 Cal.App.5th 1258, 1287.)

[6] Vehicle Code section 21806 provides: "Upon the immediate approach of an authorized emergency vehicle which is sounding a siren and which has at least one lighted lamp exhibiting red light that is visible, under normal atmospheric conditions, from a distance of 1,000 feet to the front of the vehicle, the surrounding traffic shall, except as otherwise directed by a traffic officer . . . [¶] . . . yield the right-of-way and shall immediately drive to the right-hand edge or curb of the highway, clear of any intersection, and thereupon shall stop and remain stopped until the authorized emergency vehicle has passed." (Veh. Code, § 21806, subd. (a)(1).)

drivers and others depicted in the bus dash camera video (trial ex. No. 2) corroborated Caceres's testimony.[7]

The court further found that while Caceres was negligent for failing to look to her right before entering the intersection, that failure on her part was not a substantial factor[8] in causing the collision. It explained in detail based

---

[7] The court stated: "Exhibit 2 was a video taken from inside the bus. The video corroborates Caceres's testimony. She never looks to her right, the direction from which [the police car] came, until just before [the police] car hits the bus. At that moment, Caceres looks to her right. Exhibit 2 shows Caceres turning her wheel hard to the left, away from [the] oncoming [police] car. [¶] Exhibit 2 captures the bus passengers. The passengers' actions corroborate Caceres's testimony that she neither heard the siren nor saw the lights. At the moment Caceres's head turns right (toward [the] oncoming [police] car), a passenger also turns right. At the moment Caceres turns the steering wheel, the passenger's eyes get wide, he opens his mouth and braces for impact. The passenger's actions are circumstantially consistent: he heard the siren and saw [the police] car at the exact moment Caceres did." The court also explained that the movement of other cars in the intersection— some of which moved into the intersection like Caceres did despite the approaching police car—"circumstantially corroborate[d]" Caceres's testimony. The court found the evidence "overwhelmingly corroborate[ed] Caceres's testimony that she did not hear the siren or see the emergency lights."

[8] The substantial factor test applies "where concurrent independent causes contribute to an injury . . . ." (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 661; *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352, fn. 12; see *Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 153, fn. 14.) "Concurrent independent causes 'are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm.'" (*Modisette,* at p. 153, fn. 14, quoting *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240.) Where a case does not involve concurrent independent causes, "the 'but for' test governs questions of factual causation." (*State Hospitals, supra,* at p. 352, fn. 12; *Viner,* at pp. 1239-1241; *Modisette,* at p. 153, fn. 14.) We presume the court correctly applied the substantial factor test, as Salto does not demonstrate any different standard should have applied.

on the position of Caceres's bus, the traffic patterns, and expert testimony concerning the timing of the accident, why there was "no persuasive evidence" that Caceres could or should have seen or heard the police vehicle before she entered the intersection.

Finally, the court alternatively ruled that even if Caceres's conduct was a substantial factor in causing the accident, she was only one percent at fault and Hibbard was comparatively 99 percent at fault. The court pointed out Hibbard's conduct was "grossly negligent, bordering on reckless" as he approached a "wall of cars" traveling across the intersection, but went through it anyway.[9]

In making its ruling, the trial court rejected the parties' expert testimony as to what Caceres would, could or should have perceived, but accepted the experts' "observations, measurements and calculations . . . ." It found trial exhibit Nos. 1 and 2, the dash camera video from Officer Hibbard's vehicle and the bus, "more persuasive." It accepted the factual

---

[9]    The court found: "The law and Riverside Police policy require Hibbard to consider all the circumstances, including bystander safety. Hibbard was chasing a shoplifting suspect in a stolen car. He had air support: a helicopter was tracking the suspect. Under Riverside Police policy (Exhibit 32), the helicopter had control of the pursuit. [¶] Like most other drivers in that intersection, Caceres drove through the intersection on a green light, unaware of the danger that awaited. At most, she failed to look right. [¶] On the other hand, Hibbard engaged in a high-speed pursuit of a shoplifting suspect in a stolen car. Hibbard was not chasing a murder or carjacking suspect. He had no information that the suspect was a danger to the public other than the danger created by the high-speed chase. Hibbard, unlike Caceres, could see the danger in front of him. He was aware of the red light, the cross[-]traffic. He saw the stolen car slam on its brakes, barely avoid a collision, and continue. Hibbard was aware that the cross-traffic was not stopping. He knew he had air support. Hibbard knew of the danger, knew he could avoid it, but ignored that danger and drove through the intersection. [¶] If Caceres was a substantial factor, she was a negligible one. At most, she was one percent at fault."

findings of a California Highway Patrol officer investigating the accident, but not his opinions or assessment of fault. The court stated it relied on the "video evidence, the objective measurements and estimates of the experts, and common sense."

## DISCUSSION

### I. *Standard of Review*

We apply settled review standards for a judgment based on a statement of decision following a bench trial. (See *Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125; *McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257; *Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981.) We review questions of law de novo, and review for substantial evidence the trial court's express and implied findings of fact. (*McPherson*, at p. 257; *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 109.) The substantial evidence standard of review is "highly deferential." (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 581.) Under it, we must accept all evidence supporting the trial court's order, and completely disregard contrary evidence. (*Ibid*.) "[W]e 'liberally construe[ ]' findings of fact 'to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.] 'We may not reweigh the evidence and are bound by the trial court's credibility determinations.' [Citation.] Testimony believed by the trial court 'may be rejected only when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " ' " [Citation.] ' "The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record." ' " (*McPherson*, at p. 257.) " 'A single witness's testimony may constitute substantial evidence to

10

support a finding.' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*Ribakoff,* at p. 162; *McPherson v. EF Intercultural Foundation, Inc.*, *supra*, 47 Cal.App.5th at p. 257.) Only prejudicial error is grounds for reversal. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) Where the trial court misapplies a legal standard, the appellant must show the error was prejudicial, "i.e., there is a reasonable probability the [appellant] would have obtained a more favorable result if the court had applied the correct standard." (*Orange County Water District v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 313-314; see also *Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.*, *supra*, 6 Cal.App.5th at p. 1287.)

Salto maintains all of her claims involve the trial court's "purely legal rulings," including as to causation, which she argues is based on undisputed evidence contained in the bus and police dash camera video. Thus, she asserts we must apply a de novo standard of review on appeal. We disagree. In making its ruling, including its causation analysis, the court did not limit its consideration to the video evidence. The court also made a credibility assessment of Caceres's testimony in the face of some contrary evidence (her report to police that she heard an emergency siren, as well as expert evidence that she *should have* heard the siren). It considered expert testimony that it expressly weighed (rejecting the experts' conclusions about what Caceres could or should have seen but accepting other conclusions). And it engaged in a "common sense" drawing of inferences and conclusions from other facts established at trial, particularly the positioning of vehicles coming and going

11

in the intersection and how a reasonable driver would react to events unfolding in front of him or her.

These circumstances require this court to conduct a highly deferential substantial evidence review of the lower court's causation findings, contrary to Salto's assertion. When doing so, "[o]ur job is only to see if substantial evidence exists to support the verdict in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt v. Superior Court, supra*, 44 Cal.App.5th at p. 582.) "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) Further, we must defer to the trial court's credibility call that Caceres was unable to hear or see the police car's lights and siren before entering the intersection. "[I]n a bench trial, the trial court is the 'sole judge' of witness credibility." (*Schmidt*, at p. 582; see also *Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 492.) " ' "[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal." ' " (*Hudson v. Foster* (2021) 68 Cal.App.5th 640, 661.)

## II. *Salto's Claim and Issue Preclusion Arguments*

Salto contends the summary judgment entered in favor of City and Hibbard in the consolidated action based on an immunity defense barred defendants from arguing or presenting evidence of City's or Hibbard's comparative negligence. Relying on *Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, Salto argues that for City to avoid derivative liability for the actions of its officers engaged in an immediate pursuit (Gov. Code,

12

§ 815.2), the officers must have acted with due care under the emergency circumstances, and thus the court's determination of City's immunity necessarily decided that Hibbard was not negligent in the operation of his vehicle. She argues the court consequently erred as a matter of law by failing to apply collateral estoppel and res judicata to bar the defendants from attributing fault to City and Hibbard at trial. Salto maintains the court's refusal to apply these doctrines "was an error of law that clearly influenced the court's decision on liability in this case."

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case. . . . [Courts] now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel.' [¶] Claim and issue preclusion have different requirements and effects. Claim preclusion prevents relitigation of entire causes of action" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326) in cases " 'of the same cause of action in a second suit between the same parties or parties in privity with them.' " (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323.) "*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC,* at p. 824.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825; see also *Grande v. Eisenhower Medical Center*, at p. 323.)

Salto argues for offensive issue preclusion.  Typically, that is where a plaintiff "seeks to prevent a defendant from relitigating an issue determined *adversely* to defendant in another action" (*Abelson v. National Union Fire Ins. Co.* (1994) 28 Cal.App.4th 776, 787, italics added), and out of fairness to the defendant is more closely scrutinized than defensive use.  (*Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1180.)  City and Hibbard's summary judgment motion was based on City's adoption of a pursuit policy and Hibbard's compliance with it.  The papers do not cite *Brummett v. County of Sacramento, supra*, 21 Cal.3d 88 or address whether Hibbard breached any duty of care.  The question of Hibbard's negligence must have been *actually litigated* in those papers and defendants must have had a " ' "full and fair" opportunity to litigate the issue.' " (*Daily v. City of San Diego* (2013) 223 Cal.App.4th 237, 256.)  We question whether issue preclusion would apply under these circumstances, particularly where no party opposed the summary judgment motion, which decided the immunity issue in defendant's *favor* giving defendants "little incentive to defend [any claim of Hibbard's negligence] vigorously."  (*Ibid.*)

We need not resolve the matter.  The court's ruling allocating fault between Caceres and Hibbard was *alternative* to its finding that Caceres's negligence in failing to look to her right before entering the intersection was not a substantial factor in causing Salto's injuries.  Because ultimately we uphold the court's finding on the absence of causation, which by itself warrants judgment in defendants' favor, we need not reach the court's alternative ruling or address whether the court erred by not precluding defendants from presenting evidence or argument on Hibbard's negligence at trial.

Further, Salto's cursory assertions about how the court's error "clearly" influenced its causation finding do not establish prejudice. As stated, a trial court's legal error, if there was one, is not reversible unless the plaintiff affirmatively demonstrates prejudice, that is, that the errors have resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 615 [plaintiffs' contention "they 'clearly were prejudiced by . . . error' in [jury] instructions" did not establish prejudice]; *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963, called into doubt on another point in *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7.) Salto " 'bears the duty of spelling out in [her] brief exactly how the error caused a miscarriage of justice.' " (*Adams*, at p. 614.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co.*, at p. 963; see also *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis"].) Salto's conclusory assertion fails to articulate the more favorable result that she believes would have been achieved in the absence of error. (*Orange County Water District v. Alcoa Global Fasteners, Inc.*, *supra*, 12 Cal.App.5th at pp. 313-314; accord, *Adams*, at p. 615.)

### III. *Burden of Proof on Negligence Per Se*

As stated, the trial court rejected Salto's argument that Caceres was negligent per se based on an asserted violation of Vehicle Code section 21806,

15

finding Salto failed to meet her burden to show Caceres either saw or heard the oncoming police car's lights and sirens.

Salto contends the court misapplied the burden of proof. She argues it misplaced reliance on *City of Sacramento v. Hunger, supra,* 79 Cal.App. 234, which, according to Salto, is no longer good law following the Legislature's enactment of Vehicle Code section 21806 in 1959 and its asserted deletion of a requirement that a person under the circumstances described in the statute actually hear the emergency siren. She maintains under CACI Nos. 418 and 420, as well as *Alarid v. Vanier* (1958) 50 Cal.2d 617 and *Baker-Smith v. Skolnick* (2019) 37 Cal.App.5th 340, the burden shifted to defendants to prove Caceres had a justifiable excuse for her violation, namely, she "did not and could not have reasonably heard or seen the pursuit vehicle . . . ." Salto repeats her cursory prejudice argument, stating: "The court's misapplication

of the burden of proof on excuse clearly influenced its decisions on negligence and causation."[10]

Again, Salto's arguments do not warrant reversal. "Misallocation of the burden of proof in a bench trial is not reversible error per se but must be prejudicial to warrant reversal. [Citation.] Prejudice means ' "a reasonable probability that in the absence of the error, a result more favorable to [the appellant] would have been reached." ' [Citation.] A probability does not mean 'more likely than not' but 'a *reasonable chance*, more than an *abstract possibility*.' " (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.*, *supra*, 6 Cal.App.5th at p. 1287.) Even if we were to assume the court erred in applying the burden of proof as Salto argues, Salto still carries the burden of demonstrating prejudice to obtain reversal. (Accord, *Alarid v. Vanier*, *supra*, 50 Cal.2d at p. 625 [no prejudicial error for misinstruction on

_____

10    The doctrine of negligence per se is not a separate cause of action, but an evidentiary presumption by which statutes and regulations can establish duties and standards of care in negligence actions. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927; *McKenna v. Beesley* (2021) 67 Cal.App.5th 552, 574; see also *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285-1286.) Evidence Code section 669 codifies the common law doctrine. (*Elsner*, at p. 927.) Subdivision (a) of the statute provides: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Subdivision (b) of the statute describes the showing required of a defendant to rebut this presumption. (*Elsner*, at p. 927, fn. 8.) Because the court found Caceres was negligent in failing to look to her right before entering the intersection, we question whether any error with regard to the negligence per se doctrine has any impact on the judgment.

presumption of negligence; *Warren v. Pacific Intermountain Exp. Co.* (1960) 183 Cal.App.2d 155, 167 [no prejudicial error on claim of instructional error on negligence per se].)  Salto's bare assertion that the court's negligence per se analysis "clearly influenced" its causation decision is insufficient.  (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.*, *supra*, 135 Cal.App.4th at p. 814; see also *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [s]he wants us to adopt"].)  With her cursory argument, Salto does not establish she has met this standard.

Further, though Salto attacks the court's negligence per se finding and its application of the burden of proof on that issue, she does not meaningfully discuss the court's *causation* finding and underlying analysis.  Rather, as discussed below, Salto asks us to reach our own causation opinions based solely on the bus and police dash camera videos.

A plaintiff relying on the negligence per se doctrine "still has the burden of proving causation."  (*Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 558.)  "To prove causation at trial, a ' "plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." '  [Citation.]  A 'mere possibility' of causation is insufficient.  [Citation.]  Rather, the plaintiff must demonstrate that 'the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm.' "  (*Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 858; see also *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 198; *Viner v. Sweet*, *supra*, 30

18

Cal.4th at p. 1243.)  The substantial factor test required Salto to " 'show some substantial link or nexus between omission and injury.' "  (*Tansavatdi v. City of Rancho Palos Verdes*, *supra*, 14 Cal.5th at p. 661; see also *Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 435 [plaintiff " 'must prove more than abstract negligence unconnected to the injury' "]; accord, *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 773 ["the courts 'have rejected claims of abstract negligence . . . where no connection to the alleged injuries was shown' " (italics omitted)].)

If we uphold the court's finding on the absence of causation—an independent necessary element of Salto's cause of action (see *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1132)—we need not decide whether it erred in its placement of the burden of proof as to Caceres's asserted statutory violation.  Because, as stated, causation in this case was based on inferences and deductions from disputed evidence, we must decide whether the court's finding is supported by substantial evidence.

We set out the court's causation ruling and reasoning in detail:  "The experts agreed that Caceres started into the intersection about nine seconds before the collision.  Exhibit 2 [the bus camera video] shows that immediately before Caceres's light turned green, cars passed in front of her, turning left from the northbound lane, traversing the southbound lane in front of Caceres as they turned, and then continuing in the westbound lane.  These cars would have been in front of Caceres, then to her right (the direction from which [the police car] came), just before she entered the intersection.  [Salto's] evidence does not show that it is more likely than not that had Caceres looked right before entering the intersection that she would have seen or heard [the police car].  As Caceres traveled through the intersection on the green light, she had cars to her left because she was traveling in the rightmost southbound lane.

19

There was oncoming traffic. As she first entered the intersection, the first lanes of cross-traffic were westbound, to her left. That means that, to a reasonable driver, most potential danger would be coming from the left: the westbound lanes, then the oncoming northbound traffic, then the southbound traffic. Because she was traversing the westbound lanes, there would be little reason for her to look to her right, where she would presumably see the rear ends of the cars that had just turned left before she entered the intersection. [¶] As she drove through the intersection, she would traverse the eastbound lanes. If she looked at the eastbound lanes to her right, she would have seen stopped cars in every lane except for the right turn lane. It is unclear whether those stopped cars would have prevented her from seeing [the police car's] light bar, but it is not Caceres's burden to prove that she couldn't see the light bar if she had looked right. It's [Salto's] burden to prove that she could. [¶] Before [the police] car came into the intersection, the stolen car raced through the red light. The expert witnesses agree that the last moment Caceres could perceive Hibbard's car and avoid the collision was when the stolen car first entered the intersection. But Caceres, at that moment, did not look to her right to see [the police] car. Exhibit 2 shows that she and the passengers in the bus watched the immediate danger in front of them: the stolen car that ran a red light and almost hit other cars in the intersection in front of them. It is unreasonable to expect that Caceres would look to her right in that moment of danger. Caceres, like anyone else, would fixate on the immediate threat in front of her. By the time the stolen car cleared the intersection and that danger passed, the experts agree that the time remaining was insufficient to avoid the danger. [¶] Even if Caceres had looked right before entering the intersection, it would not have prevented the

collision. The court finds that Caceres's negligence was not a substantial factor in causing [Salto's] injuries."

We cannot disturb the court's causation findings. Salto does not summarize the expert testimony about the timing of events or challenge the court's reliance on it. Under general appellate review principles, we presume that evidence supports the court's findings. (*Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 162; *Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.) We accordingly accept that the evidence showed the last opportunity for Caceres to perceive the police vehicle and avoid the collision was when the stolen car crossed the intersection. The court found that Caceres and the passengers focused on that car while it crossed in front of them, implicitly rejecting Caceres's testimony that she did not see it. Then, analyzing what a reasonable driver in Caceres's position at the intersection would do faced with the situation, it ruled it would have been unreasonable for Caceres to look to her right at that moment, and that, pursuant to undisputed expert testimony, by then there was no time left for Caceres to avoid the collision with the police vehicle. Salto does not challenge the evidence to support the court's conclusions, or make any sort of argument that the evidence was " 'inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " ' " (*McPherson v. EF Intercultural Foundation, Inc.*, *supra*, 47 Cal.App.5th at p. 257.) We do not revisit the court's inferences and credibility determinations on review for substantial evidence. Because we uphold the court's finding that Caceres's negligence in failing to look to her right before entering the intersection was not a substantial factor in causing Salto's injuries, Salto cannot demonstrate prejudice by any perceived error in the court's application of the negligence per se burden of proof.

21

IV. *Request That This Court Review the Video Evidence*

Salto asks this court to review what she characterizes as the "undisputed" dash camera video evidence to "mak[e our] own determination" on what Caceres would, could, or should have perceived, and make findings on negligence and causation. She asks us to decide if Caceres "was inattentive and if she should have braked or decelerated before the accident after the vehicle being pursued entered the intersection against a red light directly in her view several seconds before the impact with the police vehicle." Salto asserts the video disputes Caceres's testimony that she did not see the pursued vehicle pass in front of the bus, in that there is a "clear depiction[ ] of this vehicle in video from the front facing bus camera . . . ." Describing generally the sequence of events, Salto says, "This was a clearly avoidable accident if Caceres had slowed her vehicle in even the slightest manner to avoid Hibbard's impact with the front right part of her bus."

Because the court drew inferences and deductions from not only the videos, but also other testimony in reaching its causation opinion, we may not isolate our consideration of the evidence to the video.

Nevertheless, we have viewed the video evidence, which includes scenes from various cameras in the bus, as well as data indicating bus speed, direction and coordinates. Nothing in the video persuades us to change our conclusions or demonstrates the inherent implausibility of the court's findings. It shows that Caceres (and other vehicles) proceeded to traverse through the intersection seconds before the stolen vehicle entered it. As the stolen vehicle comes into view at a high rate of speed, the bus does not change speed, supporting the court's finding that Caceres neither heard nor saw the oncoming police car, with its sirens or lights. And the court's conclusion that Caceres was situated differently from Salto and the other

22

driver who heard the sirens is supported by Salto's and the other witness's testimony that their driver's side car windows were down at the time. It is true the stolen vehicle as it ran the red light plainly appears in the video crossing in front of Caceres's bus; but the court disbelieved Caceres's testimony that she did not see it, instead concluding Caceres was reasonably focused on that danger before her, and not anything headed eastbound coming after it. About two seconds later, one of the passenger's expression changes at the same time Caceres begins to turn her steering wheel to the left to avoid the police vehicle, which comes into view from the bus's camera about one second later. The video supports the court's conclusion that both Caceres and the passenger saw the police car at the same time, too late for Caceres to avoid it.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.